32

MIED ProSe 1 (Rev 5/16)  Complaint for a Civil Case

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Lonnie L Griffin

*(Write the full name of each plaintiff who is filing this complaint.
If the names of all the plaintiffs cannot fit in the space above,
please write "see attached" in the space and attach an additional
page with the full list of names.)*

**v.**

Federal Bureau of Investigation

*(Write the full name of each defendant who is being sued.  If the
names of all the defendants cannot fit in the space above, please
write "see attached" in the space and attach an additional page
with the full list of names.)*

Case No. 25.11267

*(to be filled in by the Clerk's Office)*

Jury Trial:  ☐ Yes  ☐ No
*(check one)*

F I L E D
MAY 2 7 2025
CLERK'S OFFICE
DETROIT

First Amended **Complaint for a Civil Case**

MIED ProSe 1 (Rev 5/16)  Complaint for a Civil Case

## I.     The Parties to This Complaint

### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Lonnie L. Griffin |
| Street Address | 18779 Huntington Ave |
| City and County | Harper Woods |
| State and Zip Code | MI. 48225 |
| Telephone Number | (313)826-9515 |
| E-mail Address | mrlonnielgriffin@gmail.com |

### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known).  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Federal Bureau of Investigation |
| Job or Title (if known) | |
| Street Address | 477 Michigan Ave, 26th Floor |
| City and County | Detroit |
| State and Zip Code | MI. 48226 |
| Telephone Number | (313)965-2323 |
| E-mail Address (if known) | |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title (if known) | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address (if known) | |

2

MIED ProSe 1 (Rev 5/16)  Complaint for a Civil Case

Defendant No. 3

| | |
|---|---|
| Name | _____ |
| Job or Title (if known) | _____ |
| Street Address | _____ |
| City and County | _____ |
| State and Zip Code | _____ |
| Telephone Number | _____ |
| E-mail Address (if known) | _____ |

Defendant No. 4

| | |
|---|---|
| Name | _____ |
| Job or Title (if known) | _____ |
| Street Address | _____ |
| City and County | _____ |
| State and Zip Code | _____ |
| Telephone Number | _____ |
| E-mail Address (if known) | _____ |

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

☑ Federal question        ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

3

A. **If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.
28 U.S.C. 1331

B. **If the Basis for Jurisdiction Is Diversity of Citizenship**

1. The Plaintiff(s)

   a. If the plaintiff is an individual
      The plaintiff, *(name)* _____,
      is a citizen of the State of *(name)* _____.

   b. If the plaintiff is a corporation
      The plaintiff, *(name)* _____,
      is incorporated under the laws of the State of *(name)*
      _____, and has its principal place of business in the
      State of *(name)* _____.

   *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

   a. If the defendant is an individual
      The defendant, *(name)* _____, is a citizen of the
      State of *(name)* _____. *Or* is a citizen of *(foreign nation)* _____.

   b. If the defendant is a corporation
      The defendant, *(name)* _____, is incorporated
      under the laws of the State of *(name)* _____, and
      has its principal place of business in the State of *(name)*
      _____. *Or* is incorporated under the laws of
      *(foreign nation)* _____, and has its principal place
      of business in *(name)* _____.

   *(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

4

3.      The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

Defendant Federal Bureau of Investigation made unreasonable seizures of Plaintiff's property.

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

An Order requiring the Defendant Federal Bureau of Investigation to return the property.

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: May 27_____, 2025____.

Signature of Plaintiff      _Lonnie Dri_____

Printed Name of Plaintiff  Lonnie L. Griffin

6

**Additional Information:**

**IN THE**
**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Lonnie L. Griffin,                )
    Plaintiff,                )·
                        )
Vs.                               )    Case: 2:25-cv-11267
                        )    Assigned to: Goldsmith, Mark A.
                        )    Referral Judge: Patti, Anthony P.
Federal Bureau of Investigation,  )
    Defendant.                ·)

## FIRST AMENDED

## EMERGENCY CIVIL COMPLAINT FOR RETURN OF PROPERTY

Now comes the Plaintiff's Lonnie L. Griffin, [1] in *pro se*, pursuant to 28 U.S.C. § 1331, petition's this Court for the return of property.

### JURISDCTION

This Court has jurisdiction over this original civil complaint pursuant to 28 U.S.C. § 1331.

### VENUE

Venue is appropriate in this Court because all Plaintiff is domiciled in, resides in, or does business in the Eastern District of Michigan, Southern Division. 28 U.S.C. § 1391 (a)(1). Further, the Search and Seizure Warrant was authorized by a magistrate judge, and all the property was seized in the Eastern District of Michigan, Southern Division. § 1391 (b)(1)(2)(3), (e); Fed. R. Crim. P., Rule 41(b)(1).

---

[1] Plaintiff also makes this motion on behalf of the entities Key to Life Transport and LG-Solutions Unlimited.

## I. Equitable Jurisdiction

### A. This court has equitable jurisdiction to hear this complaint for the return of property.

A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The request must be filed in the district where the property was seized. The Sixth Circuit recognizes that a motion for the return of property seeks equitable relief like a civil complaint. *White Fabricating Co. v. United States*, 903 F.2d 404, 407-08 (6th Cir. 1990). Four factors guide the analysis of whether equity demands the Court exercise jurisdiction:

> (1) whether the Government displayed a callous disregard for the constitutional rights of the movant; (2) whether the movant has an individual interest in and need for the property he wants returned; (3) whether the movant would be irreparably injured by denying return of the property; and (4) whether the movant has an adequate remedy at law for the redress of his grievance.

*United States v. Kazkaz*, 2023 U.S. Dist. LEXIS 111532 (E.D. Mich.2023); *In re $106, 622.04 in U.S. Currency v. United States,* 2019 U.S. Dist. LEXIS 213918 (E.D. Mich.2019). Griffin's complaint for the return of property satisfies all four factors of the "equitable" analysis.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

(U.S. Const. Amend.4). "As the text makes clear, the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Riley v. California*, 573 U.S. 373,

381-382 (2014), quoting, **Brigham City v. Stuart,** 547 U. S. 398, 403, 126 S. Ct.
1943, 164 L. Ed. 2d 650 (2006). To that extent, the standard of whether a search
and/or seizure was "unreasonable," has been proscribed if not based upon
"probable cause."

     "Probable Cause" is the crucial element in the Fourth Amendment, which protects
against unreasonable searches and seizures. It ensures that law enforcement has a
sufficient factual basis for obtaining warrants or making seizures. The Sixth Circuit has
defined probable cause as "reasonable grounds for belief, supported by less than *prima
facie* proof but more than mere suspicion." **United States v. Bennett,** 905 F.2d 931,
934 (6th Cir. 1990). As such, whether probable cause exists in a particular circumstance
depends on where the facts fall between the bookends of *prima facie* and suspicion.
**United States v. One 1984 Cadillac,** 888 F.2d 1133, 1137 (6th Cir.1989)("[P]robable
cause is 'a reasonable ground for belief of guilt, supported by less than *prima facie*
proof but more than mere suspicion.").

     Further, probable cause itself "deals with probabilities and depends on the totality
of the circumstances." **Illinois v Gates**, 426 U.S. 213, 238 (1983)("...we reaffirm the
totality-of-the-circumstances analysis that traditionally has informed probable-cause
determinations."). That is, the circumstances and facts as they exist at the moment of
the search and/or seizure. Thus, whether probable cause exist/ed, is established
through the lens of the particular facts of the case, and "common-sense" interpretation
of those facts. **United States v. Gordon,** 346 F.Supp.3d 999, 1013 (E.D. Mich.
2019)("[P]robable cause is a fluid concept -- turning on the assessment of probabilities

in particular factual contexts…."); quoting *District of Columbia v. Wesby,* 583 U.S. 48, 57, 199 L.Ed.2d 453, 138 S.C.t 577 (2018)(citing *Illinois v Gates*, 426 U.S. at 232).

It has been stated quite often, that determining whether probable cause exist/ed, is not a high bar. *Kaley v. United States,* 571 U.S. 320, 338, 188 L.Ed.2d 46, 134 S.C.t 1090 (2014) ("Probable cause, we have often told litigants, is not a high bar."). But it is a "bar" nevertheless. "[T]he evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Illinois v. Gates,* 426 U.S. at 231. "[T]hose versed in the field of law enforcement" must particularize the probable cause to the individual who is the subject of the probable cause determination. See *e.g., United States v. Cortez*, 449 U.S. 411, 417, 66 L. Ed. 2d 621, 101 S. Ct. 690 (1981)("But the essence of all that has been written is that the totality of the circumstances -- the whole picture -- must be taken into account." Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.").

For those reasons, ascertaining probable cause has been described as taking a two-pronged approach:

> "First, the assessment must be based upon all the **[facts].** The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions -- inferences and deductions that might well elude an untrained person.
>
> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are

4

permitted to do the same -- and so are law enforcement officers. Finally, ***the evidence thus collected*** must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

The second element [contained in the idea that an assessment of the whole picture must yield a particularized suspicion] is the concept that the process just described must raise a suspicion that the ***particular individual*** [or ***property***] … is engaged in wrongdoing."

***United States v. Tolbert***, 692 F.2d 1041, 1047 (6th Cir. 1982)(brackets, emphasis added), citing ***United States v. Cortez***, *supra;* also see ***United States v. Caicedo***, 85 F.3d 1184, 1189 (6th Cir.1996)("The Supreme Court has stated that the idea that an assessment of the whole picture must yield a particularized suspicion [of illegal activity….] contains two elements, each of which must be present…." (citation omitted). "The Court described the two elements as (1) an assessment based upon all of the [facts], which yields (2) a particularized suspicion that the particular individual is engaged in wrongdoing.").

Indeed, that the individualized evaluation that probable cause exist/ed, has long be established. "Our observation in ***United States v. Cortez,*** 449 U.S. 411, 418 (1981), regarding "particularized suspicion," ***is also applicable*** to the probable-cause standard." ***Illinois v. Gates,*** 426 U.S. at 231; *compare* ***Texas v. Brown,*** 460 U.S. 730, 742, 75 L.Ed.2d 502, 103 S.C.t 1535 (1983)(same); ***United States v. McLernon,*** 746 F.2d 1098, 1128 (6th Cir.1984)("The Supreme Court discussed the "particularized suspicion" of officers in *Texas v. Brown*: *** "Moreover, our observation in ***United States v. Cortez***, (citation omitted) regarding "particularized suspicion," is equally applicable to the probable cause requirement."); ***United States v. McCauley,*** 548 F.3d 440, 446 (6th Cir.2008)

5

In making a reasonable suspicion determination, we must consider "all circumstances surrounding the actions of a suspected wrongdoer." *United States v. One 1984 Cadillac,* 888 F.2d 1133, 1136 (6th Cir.1989)("Probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observe as trained officers. We weigh not individual layers but the 'laminated total.'" *United States v. Nigro*, 727 F.2d 100, 104 (6th Cir. 1984)(*en banc*)").

The same probable cause standard, and by consequence, the analysis of whether probable cause existed, applies to property seized and subject to forfeiture. *United States v. One 1975 Mercedes 280S,* 590 F.2d 196, 199 (6th Cir. 1978) (*per curiam*)("Further, it is apparent that "probable cause" in a forfeiture proceeding is not a special term of art, but is the same standard employed to test searches and seizures generally."); *United States v. One 1984 Cadillac, supra,* ("The probable cause standard in a forfeiture proceeding is the same standard employed to test searches and seizures."); Cf. *Kaley v. United States,* 571 U.S. 320, 333, 188 L.Ed.2d 46, 134 S.C.t 1090 (2014)("Our reasoning so far is straightforward. We held in *Monsanto* that the probable cause standard governs the pre-trial seizure of forfeitable assets….")(Emphasis added); <u>also</u> <u>see</u> *United States v. 1982 Ford Pick-up,* 873 F.2d 947, 949 (6th Cir.1989)(citing with approval the "totality of the circumstances" test set forth in United States v. Cortez, 449 U.S. 411 (1981) in a civil in rem forfeiture case). Insufficient probable cause existed for the breath of seizures made upon Griffin's person, his residence, and bank accounts.

**1. The F.B.I. showed a callous disregard for the Constitutional rights of Griffin.**

The Federal Bureau of Investigation (F.B.I.), executed two search warrants on Griffin

and his residence at 18779 Huntington Avenue on April 22, 2025. On their face, the

Warrants indicated that probable cause was established to "… search and seize the

person and property … and that the search will reveal … violations of: 18 U.S.C. § 371,

Conspiracy; 18 U.S.C. § 666, Theft or bribery in programs receiving Federal Funds; 18

U.S.C. §, Wire fraud." More particular, an attachment to the first Search and Seizure

Warrant provided:

> "The subject location shall be searched for all evidence of violations of 18
> U.S.C. § 371 (Conspiracy); 18 U.S.C. § 1343, (Wire Fraud); 18 U.S.C. §
> 666 (Federal Program Bribery), for the period May 9, 2016 to present,
> including but not limited to:
>
> 6. Records related to the finances, management and operation
> of Key to Life Transport.
> 7. Records related to the finances, management and operation
> of LG Solutions Unlimited.
> 8. Records related to the purchase or sale of real property,
> including residential and commercial property buildings.
> 9. Records related to the purchase or use of a 2024 Ford
> Transit Van, VIN 1FDAX2C87RKA50940.
> 10. Records of the receipt or distribution of proceeds from the
> conspiracy including bank accounts and money transfers.
>
>       ***
>
> 13. Electronic equipment capable of having records in items 1
> through 11, including cellular telephones, smartphones, desktop
> computers, laptop computers and tablets. Electronic devices
> capable of storing information in items 1 through 11 including
> internal and peripheral hard drives, thumb drives and memory
> cards.

(Search and Seizure Warrant, April 15, 2025, ATTACHMENT I2 (Griffin's Residence and

Electronic Devices).[2]

The second Search and Seizure Warrant authorized the search and seizure of:

---

[2] For purposes of this Complaint, Plaintiff only recited those paragraphs of the Search and Seizure
Warrant that references items relevant to this action.

"The person of Lonnie Lamont Griffin, ...., including bags, purses, luggage or other containers." (ATTACHMENT J1).

"The cellular device assigned call number 313-826-9515."

(Search and Seizure Warrant, April 15, 2025, ATTACHMENT J1 and ATTACHEMNT J2).

Commensurate with the warrant's objective, FBI agents seized all of Griffin's cellular telephones, laptop computers, legal papers, tax papers, paper files, and banking information. Further, either simultaneously or later, the FBI seized or caused to be frozen each Griffin's personal banking accounts and business bank accounts at Chase Bank.

### a) Cell Phones

Plaintiff seeks the return of all cellular telephones. The FBI seized at least eight (8) cellular telephones, three (3) tablets/laptops, and two (2) smartwatches from Plaintiff and/or the residence of Plaintiff.[3] The Supreme Court has stated that "[m]odern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans "the privacies of life." ***Riley v. California***, 573 U.S. supra at 403. One or more of the seized cellar telephones contain a wealth of information protected by the attorney—client privilege, including recent privileged communications between Plaintiff and one or more attorneys.

Plaintiff operated two separate and disparate businesses; Key to Life Transport and LG-Solutions. Multiple cellular telephones are registered to, and were used exclusively for LG-Solutions Unlimited. Notwithstanding the specific reference of the cellular number (313)826-9515 in the second warrant, there is no other cellular numbers

---

[3] At least one cellular telephone, one iPad tablet and one smartwatch belonged to Plaintiff's live-in girlfriend.

listed or referenced to justify the remaining search and seizure of every cellular telephone in Plaintiff's home. The Search and Seizure warrants failed to establish a nexus between every cell phone and the alleged criminal activity under investigation.

For example, Attorney Avery Bradley acted as counsel of record for LG-Solutions Unlimited in a Civil matter against the Michigan Department of Technology, Management and Budget (DTMB) and the Michigan State Police (MSP). One or more of the seized cellular telephones contains numerous texts and emails concerning that civil matter, including, but not limited to objectives, strategies and future courses of action.[4] In this respect, the seized cellular telephones contain a trove of privileged information, data and communication between Plaintiff and one or more attorneys of record and others.

For example, one or more of the seized the seized cellular telephones contain the names, dates of birth (DOB), Social Security Numbers (SSN), Insurance Policy Numbers, medications, doctors' information, Mental Health statuses of over 160 individuals deemed legally incapacitated by Oakland County Probate Court.

### b) Legal papers

On the date of the seizures, Tristate Guardian Services (Tristate) was the legal guardian and/or conservator of over 160 individuals deemed legally incapacitated by a Probate Court. *Findling v. Auto-Owners ins. Co. (In reMalloy)*, 15 N.W.3d 142, 2024 Mich. LEXIS 906 (May 28, 2024)("... thousands of Michiganders [are] under the care of a professional guardian who, by virtue of their legal incapacitation, are among the most

---

[4] For reasons not yet entirely clear, the FBI seized the entire paper files related to the civil action against the DTMB and MSP. This file was filed separately and clearly distinguishable from every other file location in Plaintiff's residence.

vulnerable groups in our society."). Statutorily, Tristate was providing for the care, comfort, maintenance, training, education, and taking reasonable of their clothing, furniture, vehicles, and other personal effects. (MCL § 700.5314). Additionally, to accomplish those core statutory duties, Tristate, among other things, was/is paying for Room & Board fees, medical supplies, including, but not limited to, Insulin, psychotropic medications, food, transportation to and from mental health providers, probate court, medical doctors, dentists, *etc*. *(In reMalloy)*, *supra* ("The scope of a guardian's authority must be tailored to the specific needs of the incapacitated individual.").

Operating under a Memorandum of Understanding with Tristate, Key to Life Transport executed some of these same core duties, and others, on behalf of Tristate. *(In reMalloy)*, *supra* ("The lettered list in MCL § 700.5314 does not provide an exclusive list of tasks a guardian is required or permitted to perform on behalf of an incapacitated individual."), *id* 15 N.W.3d at 153. For example, Key to Life paid room and board fees for those wards who have insufficient income, medicine co-pays for those with insufficient insurance, Insulin, Blood Pressure medications (both life or death medication), and other essential items. Without the treasure-trove of data and information stored in one or more cellular telephones (arguably privileged),[5] the taking of the cellular telephones and court files has placed numerous lives at risk.

Moreover, all of the legal authority, files, including, but not limited to, the Letters of Guardianship and Letters of Conservatorship stamped with the Oakland County Probate Court seal were seized by the FBI. Without the legal letters of authority, neither

---

[5] In the same fact situation, the FBI seized every Letter of Guardianship issued by the Probate Courts. Theses Letter of Guardianship were affixed the Probate Court seal authenticating their validity. Without a letter of authority, no information about the ward will be given to Tristate, or by extension Key to Life Trasport, and no decisions can be made on the ward's behalf.

10

Key to Life or Tristate cannot provide consent(s) for treatment, release(s) of information (as well and receive critical information), effect discharge from a mental hospital or other facility.

The effect of the FBI's seizures has, to all intents and purposes, placed the critical care of over 160 in a precarious position. *(In reMalloy)*, *supra* ("Professional guardians … are often responsible for more than one ward, with some professional guardians having hundreds of wards under their care at any given time."), *id* at 15 N.W.3d at 148. As a result, the seizure was unreasonable.

### c) Bank accounts

Subsequent to the search and seizures made upon Griffin's person and residence, the F.B.I. effected the seizure of Griffin's personal and business bank accounts at Chase Bank. To date, neither the Court (*e.g.*, pursuant to § 853(e)), or a grand jury (*via* indictment) has issued a finding of *probable cause* related to the Chase Bank accounts. Likewise, Griffin has not been provided, or made privy to any information, affidavit or otherwise, that would justify the seizure. (U.S. Const. Amend.4). As a result, the seizure amounts to a taking, unreasonable under the Fourth Amendment, and without notice and an opportunity to be heard, contrary to the Fifth Amendment.

The Supreme Court has emphatically restated this point time-an-time again. For example, in **Kaley v. United States**, the Court oft-stated:

> "So again: With probable cause, a freeze is valid." id. at 327;

> "In light of *Monsanto*'s holding that a seizure of the Kaleys' property is erroneous only if unsupported by probable cause…." id at 334;

11

"And yet Monsanto held, crucially for the last part of our Mattews analysis, that an asset freeze depriving a defendant of that interest is *erroneous* only when unsupported by a finding of probable cause." id at 337; (emphasis in original);

"But we instead decided that the Government could act "after probable cause [that the assets are forfeitable] is adequately established. (citation omitted). [T]hat a pre-trial seizure is wrongful only when there is no probable cause to believe the defendants committed the crimes charged. Or to put the same point differently, such a freeze is *erroneous* —notwithstanding the weighty burden it imposes on the defendants' ability to hire a chosen lawyer— only when the grand jury should never have issued the indictment."

*Kaley*, 571 U.S. at 337.

Analyzing the totality of the circumstances of the seizure in Griffin's case, indicates an absence of any particularized suspicion that Griffin has committed an offense subjecting his personal and business accounts to forfeiture. *Honeycutt v. United States*, 581 U.S. at 451 ("Pretrial restraints on forfeitable property are permitted only when the Government proves, at a hearing, that (1) the defendant has committed an offense triggering forfeiture, and (2) **the property at issue has the requisite connection to that crime**.")(emphasis in original), quoting Kaley, ("That determination has two parts, reflecting the requirements for forfeiture under federal law: There must be probable cause to think (1) that the defendant has committed an offense permitting forfeiture, and (2) that the property at issue has the requisite connection to that crime."); but see *United States v. Kazkaz, supra,* (... the Supreme Court has made clear that pretrial seizure, pursuant to ... necessarily requires *two probable cause findings*: (1) that "the defendant *has committed an offense permitting forfeiture*;" and (2) that "the property at issue has the requisite connection *to that crime*.")(emphasis added)(citation

12

omitted); also see *e.g., **United States v. Contents of Accounts,*** 629 F.3d 601, 608 (6th Cir.2011)("Nor does our holding limit civil forfeiture claimants' ability to contest the government's basis for forfeiture in any post-deprivation, pre-trial hearing to which they may be entitled by due process.").

That the seizure of personal banking accounts and business bank accounts by the F.B.I. were orchestrated without a seizure warrant (in violation of the 4th Amendment), nor under the guise of a protective order pursuant to 21 U.S.C. § 853(e),[6] (in violation of the 5th Amendments Due Process Clause), thus without probable cause and was unreasonable, also was contrary to one or more forfeiture states.

For example, 18 U.S.C. § 982, titled <u>Criminal Forfeiture</u>, reads "[t]he forfeiture of property under this section, including any related judicial or administrative proceeding, **shall** be governed by the provisions of … 21 U.S.C. § 853." (18 U.S.C. § 982 (b)(1). While 18 U.S.C. § 983, titled <u>General rules for civil forfeiture proceedings</u> provides:

> "***Upon application of the United States***, the court may enter a restraining order or injunction, required the execution of satisfactory performance bonds, create receiverships, appoint conservators, custodians, appraisers, accountants, or trustees, or take any other action to seize, secure, maintain, or preserve the availability of property subject to civil forfeiture –
>
> > (A) ***upon the filing of a civil forfeiture complaint*** alleging that the property with respect to which the order is sought is subject to civil forfeiture; or
> > (B) ***prior to the filing of such complaint***, if, ***after notice*** to persons appearing to have an interest in the property and ***opportunity for a hearing***, the court determines that –
> >
> > > i. there is a ***substantial probability*** that the United States will prevail on the issue of forfeiture and that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the

---

[6] Section 853(e) provides for protective/restraining orders for property "upon the filing of an indictment or information," or "prior to the filing of such an indictment or information." (§853(e)(1)(A) and (B)).

court, or otherwise made unavailable for forfeiture; **and**

ii.   the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered."

(18 U.S.C. § 983(j) – Restraining order; protective orders)(emphasis added); also see § 983(j)(3).

Because no notice and opportunity for a pre/post-deprivation hearing has been provided to Griffin, the seizure violates the Due Process Clause. Accordingly, the F.B.I. showed a callous disregard for the Fourth Amendment's prohibition against unreasonable searches and seizures, and the Fifth Amendment's right to Due Process.

**d) Ford Transit Van**

On the same day, the F.B.I. executed the search warrants on Griffin and his residence, the FBI seized a 2024 Ford Transit Van from another location. The Ford Transit van was operated by Key to Life Transport pursuant to a Memorandum of Understanding with Tristate Guardian Services. See *e.g.*, ***United States v. One 1988 Toyota Pickup Truck***, 1993 U.S. Dist. LEXIS 15014 (E.D. Mich.1993)("An interest sufficient to challenge a forfeiture action is usually established by showing that the claimant owns the asset. Ownership, however, is determined by more than bare, legal title. A claimant must demonstrate dominion and control over a *res* in order to establish his standing.").

The seizure of the Transit Van was purportedly made on the basis on an Application for a Warrant to Seize Property Subject to Forfeiture. (Application for A Warrant…., April 22, 2025). The" Application" references 18 U.S.C. § 981(a)(1)(C) and

14

28 U.S.C. § 2461 as the statutory authority for the seizure. *Id*. However, no actual warrant was produced, or left at the location of the seizure. (U.S. Const. Amend.4).

Because no warrant was produced for the seizure of the Ford Transit van, the seizure was unreasonable and shows a callous disregard for Griffin's Fourth Amendment rights to be free from unreasonable seizures (U.S. Const. Amend.4), and the Fifth Amendment's right to Due Process.

## 2. Griffin has an interest in, and a need for the property.

Griffin owns and operates Key to Life Transport (Key). Key provides specialized transport for individuals deemed legally incapacitated by a Probate Court, *et al*. These individuals deemed legally incapacitated has diagnosis of, including, but not limited to schizophrenia, bi-polar and other serious mental health challenges. That the F.B.I. would seize the bank accounts of Key and the wheelchair accessible van used to transport those individuals, was arbitrary and capricious. Without the wheelchair van, and access to the funds needed to operated it, Key will have to cease operations. Indeed, numerous previously scheduled transports have been canceled since the April 22nd seizure of the Ford Transit van and the Key to Life bank account.

Accordingly, Griffin has an interest in, and a need for the Ford Transit van, and the funds taken from the Key business account.

## 3. Griffin will be irreparably injured by denying return of the property

As mentioned above, the seizure of the Ford Transit van and the bank account effectively put Key to Life Transport out of business; a specialized business. ***Findling v. Auto-Owners ins. Co. (In re Malloy)***, 15 N.W.3d 142, 2024 Mich. LEXIS 906 (May 28, 2024)("... thousands of Michiganders [are] under the care of a professional guardian

15

who, by virtue of their legal incapacitation, are among the most vulnerable groups in our society."). The previously scheduled transports that were cancelled or rescheduled without prior notice to the riders, doctor's office's, group homes, hospital's *etc.*, is incalculable and cannot be redressed by monetary recompense. The loss of good will and the reputation of Key by the abrupt stoppage of operations is forever tarnished.

Moreover, a denial of the return of the funds seized from the Key bank account leaves Key to Life Transport without funds to operate, including, but not limited to, leaving countless wards with insufficient funds by which to cover their monthly rent, cash stipends, or other non-emergency needs. *(In reMalloy)*, *supra* ("The scope of a guardian's authority must be tailored to the specific needs of the incapacitated individual." *** "The lettered list in MCL § 700.5314 does not provide an exclusive list of tasks a guardian is required or permitted to perform on behalf of an incapacitated individual."), *id* 15 N.W.3d at 153. For this reason, Key will be irreparable harmed if this court denies the request for return of property.

## 4. There is no adequate remedy at law.

To the best of Griffin's knowledge and belief, Griffins have not been charged *via* a Complaint or Federal Indictment; merely the execution of the Search and Seizure Warrants. *United States v. Search of Music City Mktg., Inc.,* 212 F.3d 920, 923 (6th Cir. 2000)("When there are no criminal proceedings against the movant, a court may exercise its civil equitable jurisdiction over a Rule 41(g) motion."). Thus, the processes referred to in Rule 41, Fed. R. Crim. P., provides no procedural avenue for redress.

To that extent, no civil forfeiture complaint has been filed by the Government, thus making any remedies available pursuant 18 U.S.C. § 981 a non-starter. Compare

16

*Shaw v. United States*, 891 F.2d 602, 603 (6th Cir. 1989)(recognizing that "where the government has brought a civil forfeiture action a claimant may not use Rule 41 to bypass the statutory procedure provided for.").

Third, 18 U.S.C. § 982 also is not available for Griffin to seek redress, as this statutory provision, entitled <u>Criminal forfeiture</u>, addresses forfeitures imposed "on a person convicted of an offense in violation" of various criminal offenses. *Id.* As a result, the proper review of a forfeiture under § 982 would be on direct appeal. See e.g., *United States v. Hampton*, 732 F.3d 687,690 (6th Cir.2013)("Criminal forfeiture is part of a defendant's sentence, to be imposed as provided by statute. The government may seek criminal forfeiture for violation of any federal statute "for which the civil or criminal forfeiture of property is authorized." 28 U.S.C. § 2461(c). If the government include[s] notice of the forfeiture in the indictment or information, and the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case" and in accordance with the procedures set forth in 21 U.S.C. § 853.")(citations omitted).

Yet, 21 U.S.C. § 853, also entitled <u>Criminal Forfeitures</u>, likewise provides no procedural avenue for redress because "[c]riminal forfeiture is one such indeterminate piece of a sentence." *United States v. Bradley,* 965 F.3d 585, 590 (6th Cir.2020). "Forfeiture under §853 applies to "any person" convicted of certain serious drug crimes." *Honeycutt v. United States*, 581 U.S. 443, 448, 198 L.Ed.2d 73, 137 S.Ct. 1626 (2017); *but see* page 5, infra § 982 judicial or administrative forfeitures shall be governed § 853).

17

And finally, Congress enacted the <u>Civil Asset Forfeiture Reform Act (CAFRA)</u>, §

983 in 2000, "... to make federal civil forfeiture procedures fair to property owners and

to give owners innocent of any wrong doing the means to recover their property and

make themselves whole after wrongful governmental seizures." <u>H.R. Rep. No. 106-192</u>,

at 8 (1999); *United States v. Contents of Accts*., 629 F.3d 601, 607 (6th Cir.2011). The

provision outlines the circumstances under which civil forfeiture claimants are entitled to

immediate release of seized property and the procedure to be followed in obtaining

relief. However, the request for the return of property seized pursuant to § 983 is

premised on the filing of a complaint for forfeiture by an agency for the Government.

See *e.g.,* § 983(a). Because no complaint for forfeiture has been filed by the F.B.I., the

remedial provisions set forth in the CAFRA are not applicable. Consequently, no

adequate remedy at law is available to Griffin.[7]

Based upon the above, Griffin has adequately set forth facts sufficient to invoke

the Court's exercise equity jurisdiction.

## B.     A *Jamison/Jones* Hearing should be held.

A hearing should be conducted on the issue of whether the seized property is

traceable to the violation of a federal offense. The law in the Sixth Circuit governing a

hearing on traceability is found in *United States v. Jamieson*, 427 F.3d 394 (6th Cir.

2005). One of the issues in the *Jamieson* case before the trial court was whether a

hearing should be conducted on the issue of frozen assets.  *Jamieson, supra,*

("Although we have never had the occasion to resolve this question in the Sixth Circuit,

---

[7] Indeed, judging by the fact that the F.B.I. made one or more seizures pursuant to a warrant, and others without a warrant, thereby subjecting the seizures to more than one remedial process, further indicates that there is "no adequate" remedy available.

18

various other courts around the country have addressed it, with less than uniform results. The district court in this case followed the lead of the Tenth Circuit in *United States v. Jones*, 160 F. 3d 641 (10ᵗʰ Cir. 1998), in which the court noted that "an adversarial hearing that occurs shortly after freezing assets would serve to diminish the risk of an erroneous deprivation at a meaningful time....")(emphasis added).[8]  To that, the Sixth Circuit in ***Jamieson*** stated that, "[w]e have no quarrel with the district court's decision to apply *Jones*. . . ." *Id.*

The test as set forth in ***Jones*** and subscribed to by the Sixth Circuit provides as follows:

> "... a hearing is necessary only when the defendant can **(1)** "demonstrate to the court's satisfaction that she has no assets" and **(2)** "make a *prima facie* showing of the bona fide reason to believe the grand jury erred in determining that the restrained asset, 'constitute or are derived, directly or indirectly, from gross proceeds traceable to the commission of the offense." (citation to Jones omitted).

***Jamieson***, 427 F.3d at 406.

### (1) Griffin has no assets.

As mentioned above, the FBI seized or caused to be frozen each Griffin's personal banking accounts and business bank accounts. The seizure of the bank accounts, (without a judicial warrant), left Griffin without any funds to pay monthly bills or operate his transport business. To that extent, the F.B.I. subsequently seized funds deposited into the business account on or about May 6, 2025, fifteen days after the April 22, 2025 execution of the search warrants and simultaneous seizure of the personal

---

[8] Griffin filed his first motion for return of property on May 1, 2025. The Due Process concerns evident by an "erroneous deprivation" have already manifested in this case.

and business bank accounts.[9] Not only did the F.B.I. seize all the funds immediately on deposit, but effectively prevents Griffin from earning and accumulating any earned income. Thus, Griffin has no money.

**(2) there was error believing that the funds are forfeitable.**

However, as to the second ***Jamison*** showing, *i.e.,* the "… *prima facie* showing of the bona fide reason to believe the grand jury erred in determining that the restrained asset, 'constitute or are derived, directly or indirectly, from gross proceeds traceable to the commission of the offense," *ibid*, neither a grand jury or judge of this court, has made a finding of probable cause that the funds in the bank accounts "constitute or are derived, directly or indirectly, from gross proceeds traceable to the commission of" any offense.

Applying the ***Jamison/Jones*** test (or some reasonable facsimile thereof) to the present case in the first instance, Griffin has a "bona fide" [10] reason why the F.B.I. erred in with the seizure, or otherwise believed the funds "constitute or are derived, directly or indirectly, from gross proceeds traceable to the commission of" an offense.

For years, Griffin owned and operated Key to Life Transport, a specialized transportation business. Griffin contracted the business with, various group homes, Adult Foster Care homes, Professional Guardian and Conservators, and doctor's offices. The services provided encompassed including, but not limited to, transportation to and from doctors' offices, hospitals, group home-to-group home, monthly deliveries of cash stipends, personalized deliveries of clothing *etc.,* assessments of "hoarder

---

[9] "The government can acquire through forfeiture no greater interest than that held by the defendant at the time the criminal acts were committed." ***United States v. Jones***, 502 F.3d 388, 392 (6th Cir. 2007).
[10] Bona fide: **1.** Made in good faith; without fraud or deceit. **2.** Sincere; genuine. <u>Black's Law Dictionary</u>, p 217 (12 ed. 2024).

homes," and delivery of checks. All within the aegis of the statutory provisions of the

Michigan Estates and Protected Individual Code (EPIC), MCLS § 700.1 *et seq*. ***Findling***

***v. Auto-Owners ins. Co. (In reMalloy)***, 15 N.W.3d 142, 2024 Mich. LEXIS 906 (May

28, 2024) ("The lettered list in MCL § 700.5314 does not provide an exclusive list of

tasks a guardian is required or permitted to perform on behalf of an incapacitated

individual."), *id* 15 N.W.3d at 153.

Notwithstanding the comprehensive tasks undertaken on behalf of the various

Guardians/Conservator's *etc.*, Griffin (Key to Life Transport) was not an employee of

any business other than Key to Life Transport. Essentially, since 2019, Griffin operated

Key to Life Transport as a sole proprietor, with most request received *via* text, telephone

or email; all susceptible to be fulfilled while on the road.

To be sure, Griffin was paid for the work he performed. That Griffin executed

more than one function at the behest of more than one Guardians/Conservator's does

not make Griffin an "employee," or conspirator to any act or omission that may have

occurred by the Guardians/Conservator.

Moreover, whether probable cause existed with respect to whether the funds in

Griffin's accounts constitutes "... property flowing from ... or used in ... the crime itself,"

***Honeycutt v. United States***, 581 U.S. 443 , 449, 198 L.Ed.2d 73, 137 S.C.t 1626

(2017), "foreclose joint and several liability for co-conspirators." 581 U.S. at 450. That

is, whether sufficient probable cause existed, based on the totality of circumstances, an

objective observation existed, yielding a particularized suspicion, that Griffin, and to that

extent, that the funds from his accounts are forfeitable. *Id; **United States v. Garza***, 10

F.3d 1241 (6th Cir. 1993)("Our inquiry into the legitimacy of [a seizure] involves a two-

21

pronged examination of its reasonableness. First, we determine "whether there was a proper basis for the [seizure], which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to a reasonable suspicion." (citation omitted). Second, we decide "whether the degree of intrusion into the suspect's personal [property] was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances.").

That being said, under the totality of the circumstances, there is no objective fact(s), that compels a particularized suspicion that Griffin committed any federal offense; especially a "*particularized suspicion*" which indicates that any of his property is subject to forfeiture. *United States v. Hardnett*, 804 F.2d 353, 355 (6th Cir.1986)("The test for probable cause is whether "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, [to believe], in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.").

Notwithstanding the absence of a competent tribunal finding of probable cause, the Supreme Court has indicated that the traceability aspect of pretrial seizures is a technical matter. See *e.g., Kaley v. United States*, 571 U.S. at 331 n 9. ("But the tracing of assets is a **technical** matter far removed from the grand jury's core competence and traditional function—to determine whether there is probable cause to think the defendant committed a crime.")(emphasis in original). As such, this court is also positioned to ascertain, as a "technical matter," whether the funds previously in the bank accounts were subject to seizure. "And a judge's finding that assets are not

traceable to the crime charged in no way casts doubt on the prosecution itself. So that determination does not similarly undermine the grand jury or create internal contradictions within the criminal justice system." *Ibid*.

Arguably, the standard of proof has changed since the ***Kaley*** and ***Jamison*** decisions. ***Kaley***, 571 U.S. at 341 ("Congress of course may strike its own balance and give defendants like the Kaleys the kind of hearing they want. Indeed, Congress could disapprove of *Monsanto* itself and hold pre-trial seizures of property to a higher standard than probable cause."). Since ***Kaley/Jamison***, Congress passed the Civil Asset Forfeiture Reform Act of 2005 ("CAFRA"), 18 U.S.C. § 983 *et seq*. "Under the Civil Asset Forfeiture Reform Act (CAFRA), "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1)**. CAFRA imposes a higher burden of proof on the government than previously existed. Under the old standard, a showing of probable cause sufficed ....**" ***United States v. Four Hundred Sixty Three Thousand Four Hundred Ninety Seven Dollars & Seventy Two Cents ($463,497.72) in United States Currency***, 779 F. Supp. 2d 696, 706 (E.D. Mich. 2011). "The new standard was introduced to "level[] the playing field between the government and persons whose property has been seized" by raising "the government's burden of proof in civil forfeiture actions to the burden normally borne by the plaintiff in a civil case — preponderance of the evidence." [11] 779 F. Supp. 2d at 706. And the burden of proof is on the F.B.I. to show that the seized funds are forfeitable. (§ 983(c) – "In any suit or action brought

---

[11] Preponderance-of-the-evidence: The greater weight of the evidence, not necessarily established by the greater number of witnesses testifying to **a fact**, but by evidence that has the most convincing force; Black's Law Dictionary, p 1431 (12 ed. 2024).

under any civil forfeiture statute for the civil forfeiture of any property – (1) the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture."); *Jamieson*, 427 F.3d at 406 ("When the defendant makes the required showings, the burden then shifts to the prosecution to establish, by probable cause at an adversarial hearing, that the restrained assets are traceable to the underlying offense."); compare **United States v. Kazkaz**, *supra* ("The Government concedes that probable cause is required before it may exercise pretrial restraint/seizure of potentially forfeitable funds….").

Because of the absence of a probable cause finding by a grand jury or magistrate judge, the return of property complaint is a civil action, and the preponderance of the evidence standard is applicable. *Id.* Further, this court has the "technical" wherewithal to adjudicate this matter.

### RELIEF SOUGHT

For the reasons set forth above, Plaintiff's request this court to:

1) Set this action for immediate hearing;

2) Order the return of property;

3) Order any other relief this court deem fair, just and equitable

Date: 05/27/2025

/s/ _Lonnie Griffin_

Lonnie L. Griffin
18779 Huntington Ave.
Harper Woods, MI 48225
mrlonnielgriffin@gmail.com

Key to Life Transport
P.O. Box 266
Warren, MI 48090
(313)826-9515

24

## CERTIFICATE OF SERVICE

I, Lonnie L. Griffin, declare under penalty of perjury under the laws of the United

States of America that the foregoing **FIRST AMENDED EMERGENCY CIVIL**

**COMPLAINT FOR RETURN OF PROPERTY** has been delivered to the United States

Attorney's Office, Detroit Main Office, 211 W. Fort Street, Suite 2001, Detroit, MI, 48226,

by depositing the same in the U.S. Postal Mail, this 27th day of May 2025.


/s/

Lonnie L. Griffin
18779 Huntington Ave.
Harper Woods, MI 48225
mrlonnielgriffin@gmail.com

Key to Life Transport
P.O. Box 266
Warren, MI 48090
(313)826-9515
keytolifetransport@gmail.com

25