**IN THE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

Lonnie L. Griffin,　　　　　　　　　　)
Key to Life Transport, LLC,　　　　　)
　　　Plaintiffs,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　　　　　　)　　Case: 2:25-cv-11267
　　　　　　　　　　　　　　　　　　　)　　Honorable Judge: Goldsmith, Mark A.
　　　　　　　　　　　　　　　　　　　)　　Magistrate Judge: Patti, Anthony P.
Federal Bureau of Investigation,　　　)
　　　Defendant, *et al.*　　　　　　　　)

F I L E D
AUG 1 2 2025
CLERK'S OFFICE
DETROIT   LH

**PLAINTIFF'S REPLY TO DEFENDANTS REPONSE TO PLAINTIFF'S
MOTIONS FOR PRODUCTION OF DOCUMENTS AND
DETERMINATION OF CONSTITUTIONAL QUESTION**

　　　　Now comes the Plaintiff's Lonnie L. Griffin, (Griffin) in *pro se*, pursuant to Local

Rule 7.1, files this Reply to Defendant Response to Plaintiff's Motions for Production of

Documents and Determination of Constitutional Question. (R.E. ??).

**PARTIES**

1.　Plaintiff Lonnie L. Griffin, is an individual resident in the State of Michigan, Wayne
　　County.

2.　Key to Life Transport, is a Limited Liability Company, registered with the Michigan
　　Department of Licensing and Regulatory Affairs (LARA), headquartered in the
　　State of Michigan, Wayne County.

3.　Defendant Federal Bureau of Investigations (FBI), is a government agency
　　headquartered in Washington, D.C., with field offices located in Detroit, Michigan,
　　Wayne County.

August 12, 2025

Respectfully submitted,

Lonnie L. Griffin, *pro se*
18779 Huntington Ave.
Harper Woods, MI 48225
(313)826-9515
mrlonnielgriffin@gmail.com

**Table of Authorities**

<u>Authority</u>                                                                                     <u>Page</u>

***Brown v. United States,***
    411 U.S. 223, 93 S. Ct. 1565, 36 L. Ed. 2d 208 (1973) ............................ 5

***Cal. v. Carney***,
    471 U.S. 386, 105 S. Ct. 2066, 85 L. Ed. 2d 406 (1985) ......................... 7

***Culley v. Marshall,***
    601 U.S. 377, 218 L. Ed. 2d 372, 144 S. Ct. 1142 (2024) ....................... 20

***Groh v. Ramirez***,
    540 U.S. 551, 157 L. Ed. 2d 1068, 124 S. Ct. 1284 (2004) ...................... 16

***Jones v. United States***,
    362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725 (1960)............................... 6

***Loper Bright Enters. v. Raimondo,***
    603 U.S. 369, 219 L. Ed. 2d 832, 144 S. Ct. 2244 (2024) ......................... 18

***Matthews v. Eldridge,***
    424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976) ................................ 18

***Mullane v. Cent. Hanover Bank & Trust Co.,***
    339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950) .................................... 17

***Nixon v. Warner Communications,***
    435 U.S. 589, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978) ............................ 7

***Simmons v. United States***,
    390 U.S. 377, 391-94, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968) .................. 6

***United States v. Andrews***,
    2014 U.S. Dist. LEXIS 185576 (W. Dist. Mich. (2014) ............................. 20

***United States v. United States Dist. Court,***
    407 U.S. 297, 92 S. Ct. 2125, 32 L. Ed. 2d 752 (1972) ............................. 8

***United States v. Eight Thousand Eight Hundred & Fifty Dollars
($8,850) in United States Currency,***
    461 U.S. 555, 565, 103 S. Ct. 2005, 76 L. Ed. 2d 143 (1983) .................... 17

***United States v. Von Neumann***,

474 U.S. 242, 244 n.3, 106 S. Ct. 610, 88 L. Ed. 2d 587 (1986) ............... 19

*Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir.1989) ................................. 14

*Bell v. Cnty. of Wayne*, 2025 U.S. Dist. LEXIS 46008 (E.D. Mich.2025) ............. 21

*Hahn v. Star Bank*, 190 F.3d 708 (6th Cir.1999) ............................................ 11

*United States v. Abdalla*, 972 F.3d 838 (6th Cir.2020) ..................................... 16

*United States v. Certain Real Property,*
726 F. Supp. 164 (U. S. Dist. Court, E. D. of Mich. (1989) ......................... 12

*United States v. Ninety-Three Firearms*, 330 F.3d 414, 424 (6th Cir.2003) .......... 19

*United States v. Real Prop. 35555 Little Mack,*
2000 U.S. App. LEXIS 9930 (6th Circuit Court of Appeals, May 5, 2000) ...... 19

*U.S. v. Sexton*, 894 F.2d 787 (6th Cir.2018) ................................................... 20

*United States v. 506,069.09 Seized from First Merit Bank,*
664 Fed Appx. 422, 434 (6th Cir.2016) ................................................. 20

5 U.S.C. § 706 ............................................................................................. 18

18 U. S. C. § 371 ......................................................................................... 8

18 U.S.C. § 981(a)(1)(C) ................................................................. *passim*

IN THE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Lonnie L. Griffin,                          )
Key to Life Transport, LLC,                 )
     Plaintiffs,                           )
                                            )
vs.                                         )   Case: 2:25-cv-11267
                                            )   Honorable Judge: Goldsmith, Mark A.
                                            )   Magistrate Judge: Patti, Anthony P.
Federal Bureau of Investigation,            )
     Defendant, *et al.*                   )

**BRIEF IN SUPPORT OF
PLAINTIFF'S REPLY TO DEFENDANTS REPONSE TO PLAINTIFF'S
MOTIONS FOR PRODUCTION OF DOCUMENTS AND
DETERMINATION OF CONSTITUTIONAL QUESTION**

**A.**

    **1) The cases cited by Defendant does not lend support to the issues
       before this court.**

    In what appears to be another red herring, Defendant cites to legal authority that

has nothing to do with the facts and circumstances before this court. *For example,*

Defendant cites to **Brown v. United States,** 411 U.S. 223, 93 S. Ct. 1565, 36 L. Ed. 2d

208 (1973), for the proposition that is not entirely clear. (R.E. 18, <u>Defendant's response

to Plaintiff's Motions for Production and determination of Constitutional Question</u>, pg.7).

[1]

    **a.** <u>Holding</u>: "In deciding this case, therefore, it is sufficient to hold that  there is no
        standing to contest a search and seizure where, as here, the defendants: (a)
        were not on the premises at the time of the contested search and seizure; (b)
        alleged no proprietary or possessory interest in the premises; and (c) were not

---

[1] It also appears that Defendant has taken to responding to Plaintiff's pleadings in combination; that is,
filing a single response to separate pleadings. Arguably, filing a single response to separate pleadings is
inconsistent with Local Rule 7.1 (i).

charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure." *Brown v. United States*, 411 U.S. at 229.

Joseph Everette Brown and Thomas Dean Smith, codefendants of one Clinton Knuckles, were involved in a conspiracy to sell stolen goods. Brown and Smith would steal merchandise from the warehouse of the Central Jobbing Co., Cincinnati, Ohio, and transport it to Manchester, Kentucky, where it would be knowingly received by Knuckles. The case presented issues concerning the admission against Smith and Brown of evidence seized at Knuckles' Dollar store in Manchester, Kentucky pursuant to an illegal search warrant. There was no question that the search of the warehouse did not comport with the Fourth Amendment. Indeed, Knuckles' motion to quash the fruits of this search was granted but that of Smith and Brown was denied because Smith and Brown claimed no possessory or proprietary rights in the goods or in Knuckles' Dollar store in Manchester, Kentucky.

On Certiorari to the Supreme Court, the Court considered the interplay of *Jones v. United States*, 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725 (1960), where the Court held that one charged with a "possessory" crime would be given "automatic" standing to contest the search and seizure, and *Simmons v. United States*, 390 U.S. 377, 391-94, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968), where the Supreme Court held that evidence given by a defendant to establish standing at a suppression hearing would be inadmissible at trial. Reserving the question of whether Simmons should overrule Jones, the Brown Court concluded that Smith and Brown lacked standing to contest the seizures made at Knuckles' Dollar store in Manchester, Kentucky absent an assertion of a "possessory" interest in the Dollar store; of which Smith and Brown could not.

6

Unlike in **Brown**, *supra*, Plaintiff challenges the seizures made upon himself and his property. As a result, **Brown v. United States**, *supra,* is inapposite and has no relevance here.

Another example, Defendant cites **Cal. v. Carney**, 471 U.S. 386, 105 S. Ct. 2066, 85 L. Ed. 2d 406 (1985). In **Cal. v. Carney,** the Supreme Court "granted certiorari to decide whether law enforcement agents violated the Fourth Amendment when they conducted a warrantless search, based on probable cause, of a fully mobile "motor home" located in a public place." 471 U.S. at 387.

    b. <u>Holding</u>: "That defendant's motor home clearly fell within the vehicle exception to the warrant requirement because it was readily mobile and was situated in a way or place that objectively indicated that it was being used as a vehicle." **Cal. v. Carney**, 471 U.S.at 391-393.

The constitutional issue concerned "exceptions to the general rule that a warrant must be secured before a search is undertaken; one is the so-called "automobile exception" at issue in this case." 471 U.S. at 390. Reviewing the history of the exception, the Supreme Court stated: "[t]he question remains whether, apart from the lack of a warrant, this search was un-reasonable. "Under the vehicle exception to the warrant requirement ... [the] search was not unreasonable." 471 U.S. at 394-95. Again, the legal underpinnings of **Cal. v. Carney,** *supra,* has nothing to do with the factual or legal questions presented in this case.

Next, Defendants reliance upon **Nixon v. Warner Communications,** 435 U.S. 589, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978), appears to offer nothing to this case. Remarking on the case boundaries, the Court noted, "[t]his case presents the question whether the District Court for the District of Columbia should release to respondents'

certain tapes admitted into evidence at the trial of petitioner's former

advisers. Respondents wish to copy the tapes for broadcasting and sale to the public."

435 U.S. at 591. With that in mind, the Court "... granted certiorari to review th[e]

holding that the common-law right of access to judicial records requires the District

Court to release the tapes in its custody." 435 U.S. at 596.

    **c. Holding**: "Holding that a "common-law" right existed to release the records, the ***Nixon*** Court further started "... we need not undertake to delineate precisely the contours of the common-law right, as we assume, *arguendo*, that it applies to the tapes at issue here." ***Nixon v. Warner Communications,*** 435 U.S. at 599.

    Unlike ***Nixon***, *supra*, Plaintiff raises a Fourth and Fifth Amendment

Constitutional, and statutory question about whether Plaintiff should have been provided

copies of the warrants purportedly issued in this case, and the affidavits purportedly

signed under Oath or Affirmation and submitted to obtain the warrants. Whatever rights

or rules that existed at common-law has nothing to do with this case.

    In an ironic twist of legal fate, Defendant also cites to ***United States v. United***

***States Dist. Court,*** 407 U.S. 297, 92 S. Ct. 2125, 32 L. Ed. 2d 752 (1972), a domestic,

electronic surveillance conspiracy case to destroy Government property in violation

of 18 U. S. C. § 371.

    **d. Holding**: "[P]rior judicial approval is required for the type of domestic security surveillance involved in this case and that such approval may be made in accordance with such reasonable standards as the Congress may prescribe." ***United States v. United States Dist. Court,*** 407 U.S. at 320, 324. "During pretrial proceedings, the defendants moved to compel the United States

to disclose certain electronic surveillance information and to conduct a hearing to

determine whether this information "tainted" the evidence on which the indictment was

based or which the Government intended to offer at trial." *United States Dist. Court*, 407 U.S. at 300.

The Government filed an affidavit of the Attorney General, acknowledging that its agents had overheard conversations in which Plamondon had participated, and filed the logs of the surveillance in a sealed exhibit for *in camera* inspection by the District Court. *Id.* The District Court held that the surveillance violated the Fourth Amendment, and ordered the Government to make full disclosure to Plamondon of his overheard conversations, 321 F.Supp. 1074 (E.D. Mich.1971); a decision the Sixth Circuit Court of Appeals affirmed. 444 F.2d 651 (1971)("[T]he surveillance was unlawful and that the District Court had properly required disclosure of the overheard conversations.").

On certiorari, the Supreme Court opined:

> "Though the Fourth Amendment speaks broadly of "unreasonable searches and seizures," the definition of "reasonableness " turns, at least in part, on the more specific commands of the warrant clause. Some have argued that "the relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable," (citation omitted). This view, however, overlooks the second clause of the Amendment. The warrant clause of the Fourth Amendment is not dead language. Rather, it has been "a valued part of our constitutional law for decades, and it has determined the result in scores and scores of cases in courts all over this country. It is not an inconvenience to be somehow 'weighed' against the claims of police efficiency. It is, or should be, an important working part of our machinery of government, operating as a matter of course to check the 'well-intentioned but mistakenly overzealous executive officers' who are a part of any system of law enforcement."

*United States Dist. Court*, 407 U.S. at 315.

In summary, the Supreme Court stated: "We emphasize, before concluding this opinion, the scope of our decision. As stated at the outset, this case involves only the domestic aspects of national security." 407 U.S. at 321. In the end, the Court affirmed

9

both lower courts and held that the defendant was entitled to inspect the documents filed under seal. *Id.*

The Fourth Amendment limitations do not change depending on the type of case involved; ("The warrant clause of the Fourth Amendment is not dead language. Rather, it has been 'a valued part of our constitutional law for decades, and it has determined the result in scores and scores of cases in courts all over this country. It is not an inconvenience to be somehow 'weighed' against the claims of police efficiency. It is, or should be, an important working part of our machinery of government, operating as a matter of course to check the 'well-intentioned but mistakenly overzealous executive officers' who are a part of any system of law enforcement."). ***United States Dist. Court,*** 407 U.S. at 315-16.

If then, the Fourth Amendment permits a defendant under criminal indictment to inspect documents filed under seal in a "national security" case so the scope and veracity of the information can be viewed, the same holds true in Plaintiff's case. In these proceedings, Plaintiff seeks to ascertain what information, if any, that the F.B.I. used, or intends to use, as a basis for forfeiture. Despite having similarities with ***United States Dist. Court,*** *supra*, (*e.g.*, also involving § 371) and one or more affidavits and other documents filed under seal, this case does not involve national security.[2] As far as Plaintiff can discern, to date, this case implicates: *property which constitutes or is derived from proceeds traceable to a conspiracy to commit healthcare fraud*, 18 U.S.C. § 981(a)(1)(C); *property which represents or is traceable to the gross receipts obtained, directly or indirectly, from a violation of wire fraud*, 18 U.S.C. §§ 981(a)(1)(C) and (D)(vi);

---

[2] Which begs the question, why all the secrecy and documents filed under seal?

10

*and property which constitutes or is derived from proceeds traceable to Federal*

*Program Bribery.*" (R.E. 14, Defendant's Response to Plaintiff's Motions for a

Preliminary Injunction and Mathews Hearing, pg. 2, Background).

Describing a standard of review, (abuse of discretion), used to "review[] a district

court's decision to limit discovery," ***Hahn v. Star Bank***, 190 F.3d 708 (6th Cir.1999) cited

the general proposition that "[t]rial courts have broad discretion and inherent power to

stay discovery until preliminary questions that may dispose of the case are determined."

190 F.3d 719. But the facts of **Hahn** are so far removed from the facts here, that the

general proposition is irrelevant.

e. **Holding**: "Because the information they were seeking would not have salvaged their claims, substantial prejudice did not result from the district court's limitation on discovery." ***Hahn v. Star Bank***, 190 F.3d at 720.

The Hahns asserted that the district court erred in not allowing them the

opportunity to conduct discovery. As the procedural facts were stated:

> "In a preliminary order dated December 1, 1997, the district court declared that "discovery will be stayed pending resolution of the pending Motion to Dismiss or for summary judgment, which is now at issue. If plaintiffs believe that they need discovery to respond to any future motions for summary judgment, they shall so move." Despite being represented by counsel at that time, the Hahns did not state any need for discovery until April 21, 1998, which was a month after the district court had granted summary judgment in favor of Star Bank. More importantly, the facts that the Hahns claim that they needed to discover have no relevance to the dispositive legal issues in question."

**Hahn,** 190 F.3d at 719-720.

Firstly, Defendants have not moved to dismiss or filed for summary judgment.

Arguably, this court cannot anticipate what motions the Defendant may or may not file at

some unknown future date to make a preliminary judgment precluding discovery. To

11

effectuate a proper ruling or judgment, the matter has to be "at issue." *Ibid*. To date, there is no motion to dismiss "at issue." See *infra*, pg. 18, (2).

Third, even if a motion to dismiss is "at issue," the Plaintiff, if discovery is necessary "to respond to any future motions for summary judgment," **Hahn**, *id*, could still request discovery. Because the discovery sought by Plaintiff is dispositive to factual (*for example*, traceability to a federal offense) and legal issues (*for example,* probable cause that the property is/was traceable to a federal offense) in question with respect to the seizure of his property, any delay is merely putting off the inevitable. In any event, the standard of review (abuse of discretion) indicated by **Hahn**, *supra*, provides no legal support to Defendant.

While **United States v. Certain Real Property**, 726 F. Supp. 164 (U. S. Dist. Court, E. D. of Mich. (1989) appears to support Plaintiff's request for determination of a constitutional question and for the production of documents and, that the "… Fourth Amendment exclusionary rule must apply to civil forfeiture proceedings in order to deter government lawlessness" and, as fittingly quoted by Defendant:

> "**It follows, then**, that a claimant must have an opportunity to contest the validity of a seizure warrant and the seizure itself in a civil forfeiture action brought by the government."

(R.E. 18 Defendant's response to Plaintiff's Motions for Production and determination of Constitutional Question, pg.7); quoting **Certain Real Property**, 726 F. Supp. at 167(emphasis in original).

f. Holding: "However, in pleading forfeiture, the government cannot rest on the affidavits used to obtain a seizure warrant at the beginning of the process. Rather, it must show that it can prove that it has a right to retain the seized property." **Certain Real Property**, 726 F. Supp. at 167.

For this reason, among others, Plaintiff has expressly sought information in the F.B.I.'s possession; information used to seize his property. Indeed, in order to effectively invoke the Fourth Amendment exclusionary rule, the F.B.I. "… through the [notice], must provide a claimant with enough information so that a challenge to the seizure can be meaningful. Ultimately, of course, the government must come forth with prima facie proof that the claimant has violated the statute to forfeit the property." ***Certain Real Property,*** 726 F. Supp. at 167. Though, bizarrely, the Defendant avers to this court that, "… civil forfeiture proceedings related to those searches and seizures, neither of which have been initiated by the government." (R.E. 18 <u>Defendant's response to Plaintiff's Motions for Production and determination of Constitutional Question</u>, pg.7).[3] The F.B.I. began forfeiture proceedings when it mailed the administrative forfeiture notices to Plaintiff.

And last, but not least, ***Baltimore Sun Co. v. Goetz,*** 886 F.2d 60 (4th Cir.1989). is another citation that does nothing to support Defendant's legal theory. Firstly, the ruling in the 4th Circuit's ***Baltimore Sun Co. v. Goetz*** case is not binding on determinations made in this circuit.

  g. **Holding**: "We hold that the appeal is not moot and that mandamus is appropriate. *** "The judicial officer's decision to seal, or to grant access, is subject to review under an abuse of discretion standard." ***Baltimore Sun Co. v. Goetz,*** 886 F.2d at 60, 65.

---

[3] In a subsequent case involving the same parties, the property owners moved the court for attorney fees because they prevailed on the forfeiture. The government opposed the granting of attorney fees, arguing that the "… federal magistrate's issuance of a seizure warrant based on probable cause establishes that its position was substantially justified," thus, no attorney fees are warranted. ***United States v. Certain Real Property,*** 728 F. Supp. 1326 (U. S. Dist. Court, E. D. of Mich., (1990). The district court rejected the government's argument, holding, "… the government asserts that this Court did not overturn the magistrate's finding of probable cause and that, as a result, it has met its burden of showing that its position was substantially justified. This argument is sophistry; it misapprehends the operation of a forfeiture proceeding…." 728 F. Supp. at 1327. Further, "[g]iven these procedural steps, the fact that the government's complaint fails to survive a motion to dismiss simply cannot be interpreted as legitimizing the initial seizure." *Ibid.*

13

Secondly, "[t]he Baltimore Sun Co., a newspaper publisher, appeals the district court's order denying its petition for a writ of mandamus ordering a magistrate to unseal a search warrant affidavit. The principal issue is whether either the *first amendment* or the *common law* confers a qualified right of access to inspect and copy affidavits supporting search warrants in the interval between execution of the warrants and indictment." 886 F.2d at 62 (emphasis added).

To date, neither the seizure or attempt at administrative forfeiture of Plaintiff's property implicates any First Amendment or common law concerns. While Fourth and Fifth Amendment, regulatory and statutory concerns abound.

In any event, the affidavit for search warrant was ultimately unsealed and released to Baltimore Sun Co. within eight months after Baltimore Sun Co. filed its petition for release. Further, notwithstanding that the *Goetz* court "… conclude[d] that affidavits for search warrants are judicial records," 886 F.2d at 63, the court "recognized" that the conclusion did "… not answer the question whether the press has a right of access secured by either the first amendment or the common law." *Goetz,* 886 F.2d at 64. After applying "[t]he test for determining whether a first amendment right of access is available," Goetz noted that Rule 41, Federal Rules Criminal Procedure is silent on when, ("… we believe implicit in the rule is the direction that they be filed within a reasonable time after the warrant is executed.") *id.* at 65, and what search warrant papers should be filed with the clerk's office, "[t]aking into consideration, … all of the relevant facts and circumstances, the [Magistrate Judge] may file all or some of the papers under seal for a stated time or until further order. Or, as frequently is done, he may conclude that the circumstances do not justify secrecy. The judicial officer's

decision to seal, or to grant access, is subject to review under an abuse of discretion standard." *Goetz,* 886 F.2d at 65. Accordingly, "notice can be given by docketing the order sealing the documents. If someone desires to inspect the papers, an opportunity must be afforded to voice objections to the denial of access." *Id.*[4]

### 2) The disclosure by Defendant that an "amended" warrant was obtained compels a hearing.

Yet, whether this court accepts the *Goetz'* First Amendment or common law rationale, Plaintiff was not even afforded such notice that the search warrant and accompanying papers were put under seal. Indeed, in Defendants response, Plaintiff, for the first time has been made aware that, to cure a particular deficiency in the purported warrant to seize the van, Defendant sought an "amended" seizure warrant." (R.E. 18, Defendant's response to Plaintiff's Motions for Production and determination of Constitutional Question, pg.3, n. 2). According to Defendant, the "amendment" was made on June 25, 2025, *over two months after* the April 22, 2025 seizure of the van, and after Plaintiff filed his motion for return of property, which included the van. A motion for return that challenged the constitutionality of the van's seizure. (R.E. 1).

It would seem that, if the government can retroactively cure a probable cause, or "particularity" deficiency in a search warrant by submitting an amended document, in whatever form, *after* the warrant's execution and *subsequent* challenge in a court of law, seriously undermines decades of Fourth Amendment jurisprudence. But see *Groh v. Ramirez*, 540 U.S. 551, 157 L. Ed. 2d 1068, 124 S. Ct. 1284 (2004)("In Massachusetts v. *Sheppard,* 468 U.S. 981, 82 L. Ed. 2d 737, 104 S. Ct. 3424 (1984),

---

[4] To this extent, *Goetz* further held that Mandamus, not an appeal, is the preferred method for review of a district court's decision not to grant access to court files. *Goetz,* 886 F.2d at 63.

we suggested that the judge, not the police officers, *may have committed [a]n error of constitutional dimension*, because the judge had assured the officers requesting the warrant that he would take the steps necessary to conform the warrant to constitutional requirements. \*\*\* "In this case, by contrast, *petitioner did not alert the Magistrate to the defect in the warrant that petitioner had drafted, and we therefore cannot know whether the Magistrate was aware of the scope of the search he was authorizing*. Nor would it have been reasonable for petitioner to rely on a warrant that was so patently defective, even if the Magistrate was aware of the deficiency."), 540 U.S. at 561 n.4. (Emphasis added). Thus, the facts, circumstances and reasonableness of the "amended search warrant" in-of-itself, calls for release of the Search Warrant, the affidavit or other information used in support of the Search Warrant. *United States v. Abdalla*, 972 F.3d 838 (6th Cir.2020)("When a warrant contains a grave mistake at issuance, such as omitting items to be seized, it is "so obviously deficient that we must regard the search as 'warrantless' within the meaning of our case law."), citing *Groh*, *supra* ("We have clearly stated that the presumptive rule against warrantless searches applies with equal force to searches whose only defect is a lack of particularity in the warrant."), 540 U.S. at 559. Further, a hearing should be held to ascertain who caused the deficiency; the Magistrate Judge or the requesting officer. *Groh,* 540 U.S. at 561 ("The mere fact that the Magistrate issued a warrant does not necessarily establish that he agreed that the scope of the search should be as broad as the affiant's request.").

B.

        **1) The Fifth Amendment's Due Process Clause compels judicial review of the facts and circumstances of the forfeiture process in this case.**

16

Defendant has averred more than once that Plaintiff is "asking the Court to opine on the legality of the federal administrative forfeiture writ large." (R.E. 18, Introduction). However, Plaintiff's Constitutional Due Process concerns are raised with due regard for the practicalities and peculiarities of the facts and circumstances of his case. See ***Mullane v. Cent. Hanover Bank & Trust Co.,*** 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950)("The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals."). With respect to forfeitures, these Due Process principles are well-established, but the sufficiency of notice ***requires a fact-based analysis*** that seeks to determine whether the notice is reasonably calculated to inform the Plaintiff of the allegations against him and provide a means for responding to the allegations.

Further, "due process is flexible and calls for such procedural protections as the particular situation demands." ***United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in United States Currency,*** 461 U.S. 555, 565, 103 S. Ct. 2005, 76 L. Ed. 2d 143 (1983)("Rather, these elements are guides in balancing the interests of the claimant and the Government to assess whether the basic due process requirement of fairness has been satisfied in a particular case."); ***Mathews v. Eldridge,*** 424 U.S. 319, 333, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976)("[D]ue process is flexible and calls for such procedural protections as the particular situation demands. "Accordingly, resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected.")(citation omitted).

17

.

To the extent Defendant is apprehensive about the court "opin[ing] on the legality of the federal administrative forfeiture writ large," is must be noted that Defendant, not Congress, has created and instituted the regulations upon which the administrative forfeiture is proceeding. (5 U.S.C. § 706). *For example*, at 18 U.S.C. §981(a), Congress noted the existence of a notice of forfeiture, but did not offer any explicit directions on what the notice must contain. ***Loper Bright Enters. v. Raimondo***, 603 U.S. 369, 219 L.Ed. 2d 832, 144 S. Ct. 2244 (2024)("The APA, in short, incorporates the traditional understanding of the judicial function, under which courts must exercise independent judgment in determining the meaning of statutory provisions." 603 U.S. at 394; ("Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires."), ***Loper Bright Enters,*** 603, U.S. at 412.

Accordingly, the federal administrative forfeiture procedures are not immune from challenge or review.

### 2) A motion to dismiss does not negate a hearing on the constitutional or statutory prerequisites of forfeiture.

Supposedly, "Defendant will, pursuant to the Court's August 5, Order, be filing a motion to dismiss on or before Friday, August 29, 2025." (R.E. 18, Defendant's response to Plaintiff's Motions for Production and Determination of Constitutional Question, pg.4). Defendant states that:

> "Pursuant to 18 U.S.C. § 981, certain property is subject to forfeiture through civil forfeiture proceedings including, but not limited to: property which constitutes or is derived from proceeds *traceable* to a conspiracy to commit healthcare fraud, 18 U.S.C. § 981(a)(1)(C); property which represents or is *traceable* to the gross receipts obtained, directly or indirectly, from a violation of wire

fraud, 18 U.S.C. §§ 981(a)(1)(C) and (D)(vi); and property which
constitutes or is derived from proceeds *traceable* to Federal
Program Bribery, 18 U.S.C. § 981(a)(1)(C)."

(R.E. 18, pg. 2, Background)(Emphasis added). That being said, such a motion does

not negate a hearing on the constitutional or statutory prerequisites of forfeiture.

First, the Supreme Court recognized that an equitable action for the return of

seized property is a viable option. See *($8,850) in United States Currency*, *supra*, ("A

claimant is able to trigger rapid filing of a forfeiture action if he desires it. First, *the*

*claimant can file an equitable action seeking an order compelling the filing of the*

*forfeiture action or return of the seized property*."), 461 U.S. at 568 (emphasis

added); *United States v. Von Neumann*, 474 U.S. 242, 244 n.3, 106 S. Ct. 610, 88 L.

Ed. 2d 587 (1986)(same); *United States v. Ninety-Three Firearms*, 330 F.3d 414, 424

(6th Cir.2003)(recognizing equitable action to trigger rapid filing); *United States v. Real*

*Prop. 35555 Little Mack,* 2000 U.S. App. LEXIS 9930 (6th Circuit Court of Appeals,

May 5, 2000)("In *$ 8,850*, the Supreme Court noted that a claimant can trigger rapid

filing of a forfeiture action by filing an equitable action to compel forfeiture proceedings,

by simply requesting that the government proceed with a forfeiture action, or by filing a

motion under Fed. R. Crim. P. 41(e) for return of the seized property."), *id* at 13.

Second, as to whether the seized property is "traceable" (according to

Defendant) to an alleged violation of federal law, each court that has considered the

matter in analogous situations, has recognized the statutory prerequisite that the seized

property must be "traceable" to the crime. See *e.g., U.S. v. Sexton*, 894 F.2d 787 (6th

Cir.2018)("The civil forfeiture statute, 18 U.S.C. § 981(a)(1)(C), permits the forfeiture of

"proceeds traceable to a violation of section...."); *United States v. 506,069.09 Seized*

19

*from First Merit Bank*, 664 Fed Appx. 422, 434 (6th Cir.2016)("18 U.S.C. §

981(a)(1)(C) authorizes the forfeiture of property "*derived from proceeds traceable*

*to*" a qualifying criminal violation...."); *compare United States v. Andrews*, 2014 U.S.

Dist. LEXIS 185576 (U.S. D.C, W. D. Mich. (2014)("The language of the statute that

opens the door to any forfeiture at all in a case like this limits forfeiture to "proceeds" of

the wrongdoing, 18 U.S.C. § 981(a)(1)(C), and then expressly defines the term "for

purposes of paragraph (1)," 18 U.S.C. § 981(a)(2). *** "The government's authority to

forfeit property can never rise higher than the source of the statutory authority for it.").[5]

Moreover, contrary to Defendant's belief, *Culley v. Marshall*, 601 U.S. 377, 144

S. Ct. 1142, 218 L. Ed. 2d 372 (2024) did not "squarely reject" *Mathews v. Eldridge*,

424 U. S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). *For example*, Justice Gorsuch,

with whom Justice Thomas joins, concurring in the judgment noted

> "I agree that no legal authority presented to us indicates a prompt
> hearing must necessarily take the form Ms. Culley and Ms. Sutton
> suppose. I agree, too, that *Mathews* v. *Eldridge*, 424 U. S. 319, 96
> S. Ct. 893, 47 L. Ed. 2d 18 (1976), does not teach
> otherwise. Under its terms, judges balance "the private and
> governmental interests at stake," *Mathews*, 424 U. S., at 340, 96 S.
> Ct. 893, 47 L. Ed. 2d 18, to determine "what procedures the
> government must observe" when it seeks to withhold "benefits"
> "such as welfare or Social Security. That test does not control—and
> we do not afford any particular solicitude to "governmental
> interests"—in cases like this one where the government seeks to
> deprive an individual of her private property."

---

[5] And, it would appear that even an indictment would not foreclose an opportunity for a hearing on traceability. See *e.g., Kaley v. United States*, 571 U.S. 320, 324, 134 S. Ct. 1090, 188 L. Ed. 2d 46 (2014)("Since *Monsanto*, the lower courts have generally provided a hearing to any indicted defendant seeking to lift an asset restraint to pay for a lawyer. In that hearing, they have uniformly allowed the defendant to litigate the second issue stated above: whether probable cause exists to believe that the assets in dispute are traceable or otherwise sufficiently related to the crime charged in the indictment.").

*Culley v. Marshall*, 601 U.S. at 393. While in the Dissent by Justice Sotomayor, it was

noted:

> "The majority's holding relates only to retention hearings. It does
> not foreclose other potential due process challenges to
> civil forfeiture proceedings. See *ante*, at 8, n. 3. People who have
> their property seized by police remain free to challenge other
> abuses in the civil forfeiture system. For instance, such claimants
> could challenge notice of a forfeiture posted only in a newspaper,
> the lack of a neutral adjudicator at an initial hearing, or the standard
> of proof necessary to seize a car. Lower courts remain free to
> apply *Mathews* to those claims. See *ante*, at 9. Due process also
> still "requires a *timely* post-seizure forfeiture hearing," *ante*, at 5, so
> claimants may continue to challenge unreasonable delays.

*Culley v. Marshall*, 601 U.S. at 414, dissent by: Sotomayor Justice Sotomayor, with

whom Justice Kagan and Justice Jackson join, dissenting. Compare *Bell v. Cnty. of*

*Wayne*, **2025 U.S. Dist. LEXIS 46008** (E.D. Mich.2025)("*Culley* reaffirmed that

forfeiture claimants may bring a due process cause of action for unreasonable delays in

their forfeiture proceedings. *Culley*, 601 U.S. at 386 (quoting *United States v. $8,850*,

461 U.S. 555, 562-563, 103 S. Ct. 2005, 76 L. Ed. 2d 143 (1983); ("his Count IV claim

survives *Culley*."). Thus, one or more of Plaintiff's contentions would survive a motion to

dismiss.

## CONCLUSION

WHEREFORE, based upon the above, the Plaintiff respectfully requested that

this Court set the matter for a hearing, to determine, among other things:

   a)  The constitutional question present;

   b)  The need and scope of the production of document's;

   c)  Any other ancillary question this court deems appropriate.

Respectfully submitted,

_____

Lonnie L. Griffin, *pro se*
18779 Huntington Ave.
Harper Woods, MI 48225
(313)826-9515
mrlonnielgriffin@gmail.com

## CERTIFICATE OF SERVICE

I, Lonnie L. Griffin, declare under penalty of perjury under the laws of the United States of America that the foregoing **RESPONSE AND BRIEF IN SUPPORT OF PLAINTIFF'S REPLY TO DEFENDANTS REPONSE TO PLAINTIFF'S MOTIONS FOR PRODUCTION OF DOCUMENTS AND DETERMINATION OF CONSTITUTIONAL QUESTION** has been delivered to the United States Attorney's Office, Detroit Main Office, 211 W. Fort Street, Suite 2001, Detroit, MI, 48226, addressed to: Michael El-Zein, AUSA, by depositing the same in the U.S. Postal Mail, this 12th day of August 2025.

/s/ _Lonnie Griffin_

Lonnie L. Griffin
18779 Huntington Ave.
Harper Woods, MI 48225
(313)826-9515
mrlonnielgriffin@gmail.com


Key to Life Transport
P.O. Box 266
Warren, MI 48090
(313)826-9515
keytolifetransport@gmail.com