UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LONNIE L. GRIFFIN,

          Plaintiff,                   Case No. 2:25-cv-11267
                                            District Judge Mark A. Goldsmith
v.                                    Magistrate Judge Anthony P. Patti

FEDERAL BUREAU OF
INVESTIGATION,

          Defendant.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO DISMISS (ECF No. 20) and DEEM MOOT PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (ECF No. 10)

**I.**     **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Defendant's August 15, 2025 motion

to dismiss (ECF No. 20), in part with prejudice and in part without.  If the Court

agrees with this recommendation, then it may **DEEM MOOT** Plaintiff's June 30,

2025 motion for preliminary injunction (ECF No. 10).

**II.**     **REPORT**

    **A.**     **Background**

    This matter concerns at least two search and seizure warrants, one issued by

Judge Altman on April 15, 2025 for 18779 Huntington Avenue, Harper Woods, MI

48225, which is Lonnie Griffin's residence (*see* ECF No. 5, PageID.41; ECF No.

15, PageID.159-161), and the other – as described by the government – issued by Judge Grand on April 22, 2025 for funds in Griffin's personal and business accounts at JP Morgan Chase Bank (*see* ECF No. 14, PageID.123-124, 136). *See also* Case No. 2:25-mc-50449-LVP (Search/Seizure Warrant) (filed April 22, 2025). It seems the related seizures took place on April 22, 2025. (*See* ECF No. 5, PageID.41-42; ECF No. 31, PageID.354, 355, 359.)

Griffin filed this lawsuit *in pro per* on May 1, 2025 against sole Defendant Federal Bureau of Investigation (FBI). In his original complaint and again in his amended complaint, Plaintiff alleges "Defendant [FBI] made unreasonable seizures of Plaintiff's property[,]" and seeks "an order requiring the [FBI] to return the property." (ECF No. 1, PageID.5-6; ECF No. 5, PageID.32-33.) Attached to Plaintiff's first amended form complaint (ECF No. 5, PageID.28-34), is an "emergency civil complaint for return of property" (*see id*., PageID.35-58), which refers to two search warrants executed on April 22, 2025 (*id*., PageID.41-42).[1]

---

[1] Griffin is the only Plaintiff in this case, because he is the only one listed in the captions of Plaintiff's original and amended pleadings. (*Compare* ECF No. 1, PageID.1, 8 & ECF No. 5, PageID.28, 35; *with*, ECF Nos. 10, 13, 15, 16, 17, 19, 24.) *See also* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties[.]"). To the extent Plaintiff intended to bring this matter "on behalf of the entities Key to Life Transport and LG-Solutions Unlimited[,]" (ECF No. 1, PageID.8 n.1; ECF No. 5, PageID.35 n.1), he was unable to do so unless he is a lawyer. *See, e.g.*, *Honorable Ord. of Kentucky Colonels, Inc. v. Kentucky Colonels Int'l*, No. 24-5511, 2024 WL 3912833, at *1 (6th Cir. Aug. 2, 2024) ("A corporation, partnership, or association may appear in federal courts only through licensed counsel; those entities may not conduct federal litigation through an

2

The Court denied Plaintiff's *in forma pauperis* application (ECF Nos. 2, 6),

Plaintiff has since paid the filing fee, and Defendant has appeared via counsel

(ECF No. 9).

### B.      Pending Motions

Judge Goldsmith has referred this case to me for pretrial matters.  (ECF No.

11.)  On November 19, 2025, after counsel first appeared on Plaintiff's behalf

(ECF No. 28) and the Court conducted a status conference at which it directed

counsel to consider whether any of Plaintiff's *pro se* motions should be withdrawn

(*see* Text-Only Order, 10/27/25), Plaintiff withdrew several motions (ECF Nos. 13,

15, 16, 22, 23).  (ECF No. 32.)  Two remain pending:

- Plaintiff's June 30, 2025 "complaint for preliminary injunction" (ECF No. 10), which is based on June 20, 2025 Administrative Forfeiture Notices (*see id.*, PageID.71-72 ¶¶ 2-6) and lists multiple counts (*id.*, PageID.7  2-77);

- Defendant's August 15, 2025 motion to dismiss (ECF No. 20), as to which Plaintiff has filed a timely response (ECF Nos. 21, 24), Defendant has filed a reply (ECF No. 27), Plaintiff has

---

officer, agent, or shareholder.") (citing *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-03 (1993)).  This Court's attorney admission record does not have a listing for Lonnie Griffin.  *See* https://www.mied.uscourts.gov/index.cfm?pagefunction=AdmissionCheck (Nov. 13, 2025).  And, the October 21, 2025 appearance of counsel is only on behalf of Griffin.  (ECF No 28.)

filed a supplemental response (ECF No. 31), and Defendant has filed a supplemental reply (ECF No. 33).[2]

This report addresses Defendant's motion (ECF No. 20) to dismiss Plaintiff's amended complaint (ECF No. 5).

## C.    Discussion

By his amended complaint, Plaintiff seeks the return of the seized cell phones, legal papers, bank accounts, and Ford Transit van.  (*See* ECF No. 1, PageID.42-49.)

### 1.    Civil Asset Forfeiture Reform Act of 2000

The Civil Asset Forfeiture Reform Act (CAFRA) is codified at 18 U.S.C. §§ 983, 985 and 28 U.S.C. §§ 2466, 2467.  Griffin's complaint is based in part on 18 U.S.C. § 983.  (ECF No. 5, PageID.47-48, 52, 57.)  Under Section 983, civil forfeiture proceedings can be nonjudicial by way of timely written notice from the government (*see* 18 U.S.C. § 983(a)(1)(A)(i)), or the government can timely file a civil judicial forfeiture action (*see id.*, § 983(a)(1)(A)(ii)).  Moreover, if, "before the 60-day period expires," the Government "does not file a civil judicial forfeiture

---

[2] Plaintiff's supplemental brief was permitted during the Court's October 24, 2025 video status conference.  It appears to have been filed in a smaller type size than the 14-point font requirement found in E.D. Mich. LR 5.1(a)(3).  Plaintiff and his counsel are warned that non-compliance with LR 5.1 subjects briefing to being stricken by the Court, as the Undersigned frequently does.  Furthermore, "[e]ach page must be numbered consecutively."  LR 5.1(a)(2).  This was also not done. (*See* ECF No. 31, PageID.342-348.)

4

action, but does obtain a criminal indictment containing an allegation that the property is subject to forfeiture," the Government shall either "send notice within the 60 days and continue the nonjudicial civil forfeiture proceeding under this section[,]" or "terminate the nonjudicial civil forfeiture proceeding, and take the steps necessary to preserve its right to maintain custody of the property as provided in the applicable criminal forfeiture statute."  18 U.S.C. § 983(a)(1)(A)(iii).

To date, the Court's docket does not reflect that Griffin has appeared on a complaint, indictment or information related to the seizures at issue here.  In this case, as will be discussed below, the government proceeded by a nonjudicial civil forfeiture proceeding (*see* 18 U.S.C. § 983(a)(1)(A)(i)), not by way of a civil judicial forfeiture action (*see id.*, § 983(a)(1)(A)(ii)).

### 2. Whether the Court has subject matter jurisdiction over Plaintiff's claims for the return of seized bank accounts?

With respect to the seized funds, Defendant moves for dismissal under Fed. R. Civ. P. 12(b)(1).  (ECF No. 20, PageID.228, 238, 240-245.)  "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)."  *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994)).  As the Sixth Circuit has instructed:

> A factual attack challenges the factual existence of subject matter jurisdiction.  In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case.

*Cartwright*, 751 F.3d at 759–60 (citing *Ritchie*).

Defendant sets forth two arguments as to why the Court lacks subject matter jurisdiction.

### a.    Federal question (28 U.S.C. § 1331)

Initially, Defendant argues:  "Plaintiff states that the sole basis for jurisdiction is 28 U.S.C. § 1331, which standing alone, does not waive sovereign immunity and thus does not meet plaintiff's burden to establish jurisdiction." (ECF No. 20, PageID.240-241.)  By way of background, in seeking the return of his property, Plaintiff claims the basis for jurisdiction is "federal question," or 28 U.S.C. § 1331.  (ECF No. 5, PageID.30-31, 35.)  While the form complaint does not list "the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case[,]" (ECF No. 5, PageID.31), at various points in the attached "first amended emergency civil complaint for return of property," Plaintiff cites the Fourth and Fifth Amendments to the U.S. Constitution (*see* ECF No. 5, PageID.36-37, 45, 47, 48, 49), makes multiple references to probable cause (*see id.*, PageID.36-41, 45-47, 54-58) and due process

6

(*id.*, PageID.47-49, 53), and cites 18 U.S.C. § 983 of CAFRA (*id.*, PageID.47, 48, 52, 57).  For example, Plaintiff alleges the seizure of his "personal and business bank accounts at Chase Bank[,]" occurred without a seizure warrant (in violation of the 4th Amendment) and without a protective order pursuant to 21 U.S.C. § 853(e) (in violation of the 5th Amendment's Due Process Clause); thus, the seizure occurred "without probable cause," it "was unreasonable," and it "was contrary to one or more forfeiture [statutes]."  (ECF No. 5, PageID.45-48.)[3]

To the extent the government contends that "Plaintiff has not identified a waiver of sovereign immunity that would allow him to proceed with his complaint," (ECF No. 20, PageID.235), it relies upon *Reed v. Reno*, 146 F.3d 392, 397-398 (6th Cir. 1998) (Section 1331 does not on its own "waive sovereign immunity" over "claims for money judgments against the United States.") and *Reetz v. United States*, 224 F.3d 794, 795 (6th Cir. 2000) (affirming "the dismissal of [a] Federal Tort Claims Act . . . case seeking to recover for injuries sustained

---

[3] In his response, Plaintiff mentions "[t]he waiver of sovereign immunity contained in [5 U.S.C.] § 702 . . ." of the Administrative Procedure Act (APA) (*see* ECF No. 24, PageID.271-273), and, in his supplemental response, Plaintiff suggests he "has stated valid constitutional and statutory claims under the [APA], 5 U.S.C. § 706[,]" (ECF No. 31, PageID.337; *see also id.*, PageID.345); Defendant responds (ECF No. 27, PageID.324; ECF No. 33, PageID.376.)  However, the operative pleading (*i.e.*, Plaintiff's May 27, 2025 amended complaint) does not refer to 5 U.S.C. §§ 701-706; instead, it refers to 18 U.S.C. § 982 ("Criminal forfeiture"), 18 U.S.C. § 983 ("General rules for civil forfeiture proceedings"), and 21 U.S.C. § 853 ("Criminal forfeitures") (*see* ECF No. 5, PageID.47-48, 51, 57).

while operating an off-road vehicle . . . in a national forest in Michigan."). (ECF No. 20, PageID.240-241; ECF No. 27, PageID.323-324.)

However, responding that sovereign immunity "does not act as a jurisdictional bar [in] this case[,]" (ECF No. 24, PageID.270-274), Plaintiff contends he has not sued for monetary damages. (*Id*., PageID.273-274.) Indeed, Plaintiff's operative pleading's prayer for relief seeks only an "immediate hearing" and "the return of property[.]" (ECF No. 5, PageID.58.)

### b.   Equitable jurisdiction

Before proceeding to Defendant's other jurisdictional argument, it is appropriate to note Plaintiff's argument within his amended pleading that this Court "has equitable jurisdiction to hear this complaint for the return of property." (ECF No. 5, PageID.36-40.) *See*, *e.g.*, *White Fabricating Co. v. United States*, 903 F.2d 404, 407-408 (6th Cir. 1990) ("The language of [Fed. R. Crim. P. 41(e)] may be read implicitly to authorize such motions to be made in the district court *before* a criminal prosecution has begun.") (emphasis in original); *United States v. Search of Music City Mktg., Inc.*, 212 F.3d 920, 923 (6th Cir. 2000) ("There is no criminal indictment or proceeding pending against [appellant]. Thus, [its] motion for the return of its property was really in the nature of a civil proceeding invoking the court's equitable powers, rather than a criminal proceeding."). Similarly, within

his motion response, Plaintiff contends that his "motion" for the return of property

was properly filed seeking equitable review.  (ECF No. 24, PageID.274-276.)

"Four factors guide the analysis of whether equity demands the Court

exercise jurisdiction:

> (1) whether the Government displayed a callous disregard for the
> constitutional rights of the movant; (2) whether the movant has an
> individual interest in and need for the property [they] want [ ]
> returned; (3) whether the movant would be irreparably injured by
> denying return of the property; and (4) whether the movant has an
> adequate remedy at law for the redress of [their] grievance.

*Kazkaz*, 2023 WL 4237758, at *9 (referencing *In re Search of 32900 Five Mile

Rd.*, Nos. 13-50293, 15-50512, WL 3742589, at *4 (E.D. Mich., June 15, 2015)

(Edmunds, J.) (citing *Ramsden v. United States*, 2 F.3d 322, 325 (9th Cir. 1993))).

Plaintiff alleges his "complaint for the return of property" satisfies "all four

factors of the 'equitable' analysis[,]" (ECF No. 5, PageID.36-40), specifically

alleging the FBI showed callous disregard for his constitutional rights (ECF No. 5,

PageID.40-49), he has an interest in and a need for the property (*id*., PageID.49),

he will be irreparably injured if denied return of the property (*id*., PageID.49-50),

and there is no adequate remedy at law (*id*., PageID.50-52).

### c.    CAFRA (18 U.S.C. § 983)

Alternatively, Defendant argues that "the Court would still lack jurisdiction

due to CAFRA."  (ECF No. 20, PageID.241.)  In his operative pleading, Plaintiff

perhaps attempts to anticipate this argument by pleading that "[t]here is no

adequate remedy at law[,]" citing 18 U.S.C. § 981 ("Civil Forfeiture"), 18 U.S.C. §

982 ("Criminal forfeiture"), and 18 U.S.C. § 983 ("General rules for civil forfeiture

proceedings"), as well as 21 U.S.C. § 853 ("Criminal forfeitures").  (ECF No. 5,

PageID.50-52.)

The Court need not address Plaintiff's assertions that 18 U.S.C. §§ 981 and

982 do not provide him with a method of redress as to the seized funds (*see* ECF

No. 5, PageID.50-51), because, as set forth below, 18 U.S.C. § 983(a)(2) of

CAFRA provides an adequate remedy at law as to the seized funds,

notwithstanding Plaintiff's argument to the contrary (*see id.*, PageID.52.)

### i.    Timing of notice (18 U.S.C. § 983(a)(1)(A)(i))

Plaintiff's operative pleading seeks return of "bank accounts" (*see* ECF No.

5, PageID.45-48), alleging "the F. B. I. effected the seizure of Griffin's personal

and business bank accounts at Chase Bank."  (*Id.*, PageID.45.)[4]  Plaintiff alleges

---

[4] Defendant contends "the total value of the seized funds at issue is $131,589.87,
well within the limit for administrative forfeiture proceedings."  (*Id.*, PageID.237;
ECF No. 27, PageID.322-323.)  Thus, Defendant assumes the seized funds at issue
in Plaintiff's complaint are those held in Plaintiff's name ($1,077.56, $133.32) or
the name of his identified business, Key to Life Transport ($130,378.99) but not
the $335,747.38 of seized funds held in the name of Tri-State Guardian Services,
Inc. (*see* ECF No. 20, PageID.235 n.1; ECF No. 10, PageID.83, 85; ECF No. 13,
PageID.108), which Plaintiff alleges is another of the businesses he operated (*see*
ECF No. 5, pageID.42).  As it turns out, even including the funds held in the name
of Tri-State Guardian Services, the total seized amount appears to have been
$467,337.25, which is still less than the $500,000 limit referenced by Defendant.
(*See* ECF No. 20, PageID.237 (citing 18 U.S.C. § 981(d), 19 U.S.C. § 1607(a)(1));
*see also* ECF No. 13, PageID.114.)

the seizure of his bank accounts "amounts to a taking, unreasonable under the

Fourth Amendment," and occurred "without notice and an opportunity to be heard,

contrary to the Fifth Amendment."  (ECF No. 5, PageID.45.)  Plaintiff further

alleges that, "[b]ecause no notice and opportunity for a pre/post-deprivation

hearing has been provided to [him], the seizure violates the Due Process Clause."

(*Id.*, PageID.48.)

Taking Plaintiff at his word, the bank accounts were seized on April 22,

2025.  (ECF No. 5, PageID.49, 53-54.)  Here, Defendant FBI has initiated

administrative forfeiture – *i.e.*, nonjudicial – proceedings as to Plaintiff's seized

funds.  "Upon seizure of property subject to forfeiture, the government must send

written notice to the property owner within 60 days."  *Matthews v. Drug Enf't*

*Admin.*, 629 F. App'x 723, 725 (6th Cir. 2015) (citing 18 U.S.C. §

983(a)(1)(A)(i)).  Sixty (60) days after the seizure was Saturday, June 21, 2025.

The United States Department of Justice (USDOJ) "Notice[s] of Seizure of

Property and Initiation of Administrative Forfeiture Proceedings" dated June 20,

2025 concern funds from various JPMorgan Chase accounts held in the name of

Tri-State Guardian Services, Inc., Key to Life Transport, L.L.C., or Lonnie Lamont

Griffin.  (*See* ECF 10, PageID.81-83, 85-86; ECF No. 13, PageID.106-108, 110-

---

111; ECF No. 15, PageID.163-165).[5]  (*See also* ECF No. 20, PageID.237-238.)  It seems the notices regarding seizure of funds in certain bank accounts – one sent to Key to Life Transport, L.L.C. in Detroit, MI and another sent to Griffin in Harper Woods, MI (*see* ECF No. 13, PageID.81-83, 85-86; ECF No. 31-2, PageID.355-359) – were each post-marked on June 20, 2025 (ECF No. 31-3, PageID.363, 364). Thus, these notices were timely *sent*, even if they were "post-marked June 20, 2025 – nearly 60 days after the seizures . . . ."  (ECF No. 31, PageID.342.)

### ii.    Content of notice (28 C.F.R. § 8.9(b)(2))

In his motion response, Plaintiff contends that CAFRA "does not preclude subject-matter jurisdiction[,]" but he does so by challenging the propriety of the Government's forfeiture notices, *i.e.*, whether they provide "proper notice."  (ECF No. 24, PageID.276-280.)  To the extent Plaintiff's argument challenges the F.B.I.'s reliance on 28 C.F.R. § 8.9 ("Notice of administrative forfeiture.") – within its July 23, 2025 response to two of Plaintiff's motions (*see* ECF No. 14,

---

[5] The official on-line record of the State of Michigan's Department of Licensing and Regulatory Affairs (LARA), of which the Court takes judicial notice under Fed. R. Evid. 201, lists "Key to Life Transport Limited Liability Company" as a domestic limited liability company with Lonnie L. Griffin as its resident agent and "Tri-State Guardian Services Inc." as a domestic corporation with Kijuana Evans as its resident agent.  Likewise, LG-Solutions Unlimited, L.L.C. (a/k/a "LG-Solutions Unlimited") another company Plaintiff allegedly "operated" (ECF No. 5, PageID.42), is as a domestic limited liability company with Lonnie L. Griffin as its resident agent.  *See* https://mibusinessregistry.lara.state.mi.us/search/business (last visited Dec. 4, 2025).

PageID.128-130) or even within the present motion to dismiss (*see* ECF No. 20,

PageID.237) – Section 8.9 states that the seizing agency's personal written notice

must:

> (i) State the date when the personal written notice is sent; (ii) State the
> deadline for filing a claim, at least 35 days after the personal written
> notice is sent; (iii) State the date, statutory basis, and place of seizure;
> (iv) State the identity of the appropriate official of the seizing agency
> and the address where the claim must be filed; and (v) Describe the
> seized property.

28 C.F.R. § 8.9(b)(2) ("Content of personal written notice.").  The government's

description that such written notices "need only contain" certain items (*see* ECF

No. 14, PageID.129; ECF No. 27, PageID.325) is consistent with the regulation's

terms, and the notices sent to Key to Life Transport, L.L.C. in Detroit, MI and

Griffin in Harper Woods, MI contain the required information (s*ee* ECF Nos. 31-2,

PageID.355-359).

Plaintiff contends that Congress did not define "proper notice" under 18

U.S.C. § 983(a)(1)(A)(i), and that the Court "should not defer to the F.B.I. that the

'proper notice' contemplated by Congress . . . and the Due Process Clause is the

notice" set forth in 28 C.F.R. § 8.9(b)(2).  (ECF No. 24, PageID.276, 277.)

However, this regulation is one of many concerning the Department of Justice (*see*

28 C.F.R. §§ 0.1-202.1401), *i.e.*, it is not limited to the Federal Bureau of

Investigation; indeed, Section 8.9 contains multiple references to "the seizing

agency . . . ."  Thus, it is not, as Plaintiff suggests, Defendant FBI's "own

13

regulation," and the Court does not consider it to be "self-serving." (ECF No. 24, PageID.276, 277.)[6]

Plaintiff additionally contends that, "to date, no warrant, inventory, or other information has been provided to Plaintiff with respect to the seizure of the bank accounts." (ECF No. 24, PageID.286.) However, it seems Plaintiff at least has an inventory or other information about the seized accounts. Although Plaintiff alleges the FBI's seizure of his personal and business bank accounts occurred "without a seizure warrant (in violation of the 4th Amendment)," (ECF No. 5, PageID.47), the June 20, 2025 notices of seizure of property and initiation of administrative forfeiture proceedings as to the bank accounts are attached to Plaintiff's June 30, 2025 filing (*see* ECF No. 10, PageID.81-83, 85-86), Plaintiff's July 14, 2025 filing (ECF No. 13, PageID.106-108, 110-111), and/or Plaintiff's July 24, 2025 filing (ECF No. 15, PageID.163-165).

### iii.    Timing of delivery

Additionally, in his November 7, 2025 supplemental response, Plaintiff contends the forfeiture notices were defective. (ECF No. 31, PageID.337, 341,

---

[6] Incidentally, it seems Plaintiff knows the nature of the FBI's underlying criminal investigation. As Plaintiff acknowledges in his operative pleading, the search warrants at issue indicate "on their face" that probable cause was established "to search and seize the person or property . . . and that such search will reveal" violations of "18 U.S.C. § 371, Conspiracy; 18 U.S.C. § 666, Theft or bribery in programs receiving Federal Funds; 18 U.S.C. § 1343, Wire fraud." (*See* ECF No. 5, PageID.41; ECF No. 15, PageID.159-161.)

344.)  Specifically, Plaintiff observes that the FBI sent the notices "by registered mail, return-receipt requested[,]" points out that "Defendant has produced no signed green card or other delivery confirmation[,]" and also contends he "was not home when the mail was delivered and found the notice days later in his mailbox." (ECF No. 31, PageID.342.)  Plaintiff offers copies of the envelopes post-marked June 20, 2025 – each stamped "Certified Mail" and "Return Receipt Requested" (ECF No. 31-3) – as evidence of "defective service and lack of signed return receipt[,]" (ECF No. 31-1).

However, USPS Tracking® for the number on each envelope indicates it was "delivered, left with individual" on June 23, 2025.  (ECF No. 33-2.)[7]  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."). Additionally, the notice sent to Griffin in care of David M. Belanger, Esq. (St. Clair Shores, MI) was stamped "received" June 23, 2025.  (ECF No. 31-2,

---

[7] *See also* https://tools.usps.com/go/TrackConfirmAction_input?origTrackNum=9414726699042976245695 (last visited Nov. 18, 2025); https://tools.usps.com/go/TrackConfirmAction_input?origTrackNum=9414726699042976245718 (last visited Nov. 18, 2025).

PageID.352-354.)  Therefore, to the extent Plaintiff argues that "no valid administrative forfeiture was ever initiated," because "the FBI cannot prove actual or adequate notice," (ECF No. 31, PageID.344), or because the FBI "lack[s] proof of delivery[,] (*id.*), it is unavailing.  Even if the government has not produced a signed green card, the tracking information provides adequate indicia of delivery on June 23, 2025.

### iv.  Claim (18 U.S.C. § 983(a)(2))

"To contest the forfeiture, the property owner must file a claim *with the appropriate federal agency* within 35 days of *the mailing* of notice."  *Matthews*, 629 F. App'x at 725 (citing 18 U.S.C. § 983(a)(2)(A)-(B) (emphases added)).  The notices sent to Griffin and to Key to Life Transport, L.L.C. informed Plaintiff:

"**TO CONTEST THE FORFEITURE OF THIS PROPERTY IN UNITED STATES DISTRICT COURT** . . . [,]" a claim must be filed "within 35 days of the date of this letter; therefore, you must file your claim by **11:50 PM EST on July 25, 2025**."  (ECF No. 10, PageID.82, 86 (emphases in original) (referencing 18 U.S.C. § 983(a)(2)).)[8]

---

[8] Plaintiff also alleges that "the F.B.I. subsequently seized funds deposited into the business account on or about May 6, 2025, fifteen days after the April 22, 2025 execution of the search warrants . . . ." (ECF No. 5, PageID.53.) Elsewhere in the record of this case is a copy of what purports to be an "FBI Official Notification Posted on July 5, 2025[,]" which lists funds seized from bank accounts, currency seized from 18535 Tracey Street, Detroit, Michigan, and "[m]iscellaneous electronic equipment seized from 4075 Manner Drive, Flint, MI,"

16

Defendant contends Plaintiff "did not file a claim, and the time for doing so has passed." (ECF No. 20, PageID.241; *see also* ECF No. 27, PageID.326.) Plaintiff does not appear to allege within his operative pleading that he filed a claim (*see* ECF No. 5), and his motion response suggests he did not. Indeed, he states "[t]he Government did not need to wait until Plaintiff files a claim to initiate the judicial forfeiture *via* a judicial complaint[,]" (ECF No. 24, PageID.281), and "[i]t is pure sophistry that the Government now avers that Plaintiff did not 'trigger' the filing of a judicial complaint for forfeiture by not filing a claim to the property with the F.B.I.[,]" (*id.*, PageID.283), and "an equitable filing has similar characteristics to filing a claim with the agency[,]" (*id.*, PageID.284).[9] In his supplemental response, Plaintiff argues that "the forfeiture notices [were] defective under CAFRA and the Due-Process Clause[,]" because, *inter alia*, the

and which also lists August 26, 2025 as the "last date to file" a claim, petition, or a request to release based on hardship. (*See* ECF No. 22, PageID.257.) The Court suspects the 60-day span between the alleged May 6, 2026 seizure and the July 5, 2025 notice is an attempt to comply with 18 U.S.C. § 983(a)(1)(A); however, the basis for the 52-day period between July 5, 2025 and August 26, 2025 is unclear.

[9] In making this statement, Plaintiff cites *United States v. Von Neumann*, 474 U.S. 242, 244 n.3 (1986) ("The claimant may trigger the Government's initiation of forfeiture proceedings.) and *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 569 (1983) ("A claimant is able to trigger rapid filing of a forfeiture action if he desires it."). However, these cases do not reference 18 U.S.C. § 983, and, as noted above, the government proceeded by a nonjudicial civil forfeiture proceeding (*see* 18 U.S.C. § 983(a)(1)(A)(i)), not by way of a civil judicial forfeiture action (*see id.*, § 983(a)(1)(A)(ii)).

FBI "misstated the 35-day claim period by starting it on the mailing date rather than receipt[.]"  (ECF No. 31, PageID.344.)  Yet, the statute provides:  "A claim under subparagraph (A) may be filed not later than the deadline set forth in a personal notice letter (which deadline may be not earlier than *35 days after the date the letter is mailed*), except that if that letter is *not received*, then a claim may be filed not later than 30 days after the date of final publication of notice of seizure."  18 U.S.C. § 983(a)(2)(B) (emphases added).  Thus, Defendant properly calculated the due date for Griffin's claim.

Finally, the procedure set forth in Section 983(a)(2) provides an adequate remedy at law.  *Matthews*, 629 F. App'x at 724, 725, 727 (where Plaintiffs filed a complaint seeking to set aside the forfeiture of funds, 18 U.S.C. § 983(e), Plaintiffs "had an adequate remedy at law to contest the seizure and forfeiture [*i.e.*, 18 U.S.C. § 983(a)(2)], but they failed to take advantage of it.  They no longer have a right to relief under CAFRA.").  (ECF No. 20, PageID.243.)

> ### v.    Complaint for forfeiture (18 U.S.C. § 983(a)(3))

In his amended complaint, when arguing "[t]here is no adequate remedy at law[,]" Plaintiff contends "the request for the return of property seized pursuant to § 983 is premised on the filing of a *complaint* for forfeiture by an agency for the Government[,]" and further contends that, "[b]ecause no *complaint* for forfeiture has been filed by the F.B.I., the remedial provisions set forth in the CAFRA are not

18

applicable."  (ECF No. 5, PageID.52 (emphases added).)  On this point, Plaintiff

appears to be referring to the provision, "[n]ot later than 90 days after a claim has

been filed, the Government shall file a complaint for forfeiture . . . ."  18 U.S.C. §

983(a)(3)(A).  (*See also* ECF No. 20, PageID.241, 245; ECF No. 24, PageID.281;

ECF No. 27, PageID.325-326 [citing 18 U.S.C. § 983(a)(3)(B)].)

However, as indicated by the above discussion and as discussed further

during the October 24, 2025 video status conference, the government proceeded by

way of a nonjudicial civil forfeiture proceeding.  Thus, to the extent Plaintiff

subsequently notes that the government did not file a judicial forfeiture complaint

within "90 days after *a claim* has been filed," 18 U.S.C. § 983(a)(3)(A) (*see* ECF

No. 31, PageID.341-343 (emphasis added)), he seems to conflate the procedure for

"nonjudicial civil forfeiture" with that for a "civil judicial forfeiture action . . . ."

18 U.S.C. §§ 983(a)(1)(A)(i), (ii).  Moreover, Plaintiff's supplemental response's

multiple references to Plaintiff's May 26, 2025 verified complaint (ECF No. 31,

PageID.341, 342, 343) – presumably Plaintiff's May 27, 2025 amended complaint

(ECF No. 5) – suggest Plaintiff likens *his* amended pleading in this Court to filing

a claim with the seizing agency by July 25, 2025, as contemplated by Section

983(a)(2), which would have "triggered CAFRA's 90-day judicial-filing

deadline[,]" (ECF No. 31, PageID.341), *i.e.*, the government's deadline in  Section 983(a)(3)(A).  (*See also* ECF No. 33, PageID.377.)  This likening is incorrect.[10]

Although Plaintiff asks the Court to "hold that the Government's failure to initiate timely forfeiture extinguished its authority under 18 U.S.C. § 983(a)(3)(B)[,]" (ECF No. 31, PageID.347), as detailed above, the government proceeded by a nonjudicial civil forfeiture proceeding in accordance with 18 U.S.C. § 983(a)(1)(A)(i)), and it does not appear that Griffin filed a claim in accordance with 18 U.S.C. § 983(a)(2).  Therefore, Plaintiff's reliance on Section 983(a)(3)(B) is unavailing.

> ### vi.    Motion to set aside forfeiture (18 U.S.C. § 983(e))

In his motion responses, Plaintiff acknowledges that a motion to set aside forfeiture "shall be the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute[,]" 18 U.S.C. § 983(e)(5), asserts that the government "did not file a judicial forfeiture complaint," and/or contends that "no

---

[10] Incidentally, the Court cautions Plaintiff about the accuracy of his case citations, namely the representation within his supplemental response that, in a certain Sixth Circuit case, "the Government missed the same 90-day deadline, and the Sixth Circuit ordered the property returned."  (ECF No. 31, PageID.344.)  However, the cited case concerns the 120-day period in 18 U.S.C. § 924(d)(1).  *See United States v. Ninety Three Firearms*, 330 F.3d 414, 422-423 (6th Cir. 2003) ("Consistent with the Supreme Court's analysis in *$8,850*, we believe that § 924(d)(1) does not mandate that judicial actions be brought within 120 days of the seizure, as long as an administrative proceeding has been brought within that timeframe.").

declaration of forfeiture issued[.]" (*Id*., PageID.280, 282; ECF No. 31, PageID.341, 342, 343.)  "Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute *who does not receive such notice* may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if—

> (A)  the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and

> (B)  the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

18 U.S.C. § 983(e)(1) (emphasis added).  *See also Matthews*, 629 F. App'x at 726 ("Congress has stated that '[a] motion filed under this subsection shall be the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute.'") (quoting 18 U.S.C. § 983(e)(5)).

Here, as discussed above, Plaintiff received notice.  And, if Plaintiff is challenging the actual recipient of the delivery (an individual or Plaintiff's mailbox) or the actual timing of receipt (June 23, 2025 or "days later"), Plaintiff does not seem to argue that either of these prevented him from filing a claim before the deadline discussed below (*i.e.*, July 25, 2025).

### vii.    Release of seizure property (18 U.S.C. § 983(f))

Plaintiff alleges he "has no assets" (ECF No. 5, PageID.53-54) and there "was error believing that the funds are forfeitable[,]" (*id*., PageID.54-58.)  In his

supplemental response, he maintains that his "livelihood represents a substantial

private interest; the lack of judicial oversight creates a high risk of error; and a

prompt hearing would impose minimal administrative burden."  (ECF No. 31,

PageID.346.)

   To the extent, if at all, Plaintiff is alleging hardship, each of the notices

provides directions "**TO REQUEST RELEASE OF PROPERTY BASED ON**

**HARDSHIP**[.]"  (ECF No. 10, PageID.82, 86 (emphasis in original).)  *See also* 18

U.S.C. § 983(f); 28 C.F.R. § 8.15.  As Defendant contends in its motion, "[t]he

funds and vehicle constitute personal property valued at less than $500,000 and are

going through the administrative forfeiture process, divesting the Court of

jurisdiction."  (ECF No. 20, PageID.244.)

### d.     Fed. R. Crim. P. 41(g) ("Motion to Return Property.")

   Plaintiff's complaint also references Fed. R. Crim. P. 41, alleging its

processes "provide[] no procedural avenue for redress."  (ECF No. 5, PageID.35,

50.)  Defendant argues that Plaintiff's operative pleading "is properly viewed as a

Federal Rule of Criminal Procedure 41(g) motion for return of property . . . ."

(ECF No. 20, PageID.239-240.)

   "A person aggrieved by an unlawful search and seizure of property or by the

deprivation of property may move for the property's return."  Fed. R. Crim. P.

41(g).  As Plaintiff seems to acknowledge in his amended pleading (*see* ECF No.

5, PageID.50):  "When there are no criminal proceedings against the movant, a court may exercise its civil equitable jurisdiction over a Rule 41(g) motion."  *In re Seizure of $100,622.44 in U.S. Currency*, No. 19-MC-51236, 2019 WL 6776031, at *1 (E.D. Mich. Dec. 12, 2019) (Levy, J.) (referencing *Search of Music City Mktg., Inc.*, 212 F.3d at 923); *United States v. Kazkaz*, No. 23-20022, 2023 WL 4237758, at *9 (E.D. Mich. June 28, 2023) (Drain, J.) (same).

However, "Rule 41(g) does not apply to property that is subject to federal forfeiture."  *United States v. Warren*, No. 3:24-CR-113-TAV-JEM, 2025 WL 1570720, at *6 (E.D. Tenn. June 3, 2025) (citing cases).  *See also Brown v. United States*, 692 F.3d 550, 552 (6th Cir. 2012) (where Brown filed a "motion for return of . . . money . . . under Federal Rule of Criminal Procedure 41(g), 18 U.S.C. § 983, and the Due Process Clauses of the United States Constitution[,]" Brown was "not entitled to equitable relief[,]" because "21 U.S.C. § 853(n) provides Brown with an adequate remedy at law for the purpose of vindicating her interest in the $102,570[.]").  Put another way, as to the bank accounts, this Court "lacks jurisdiction to consider a 41(g) motion now that administrative forfeiture proceedings have been initiated."  (ECF No. 20, PageID.240.)

### e.     Whether the Court should hold a traceability hearing?

Plaintiff alleges that the Court should hold a hearing "on the issue of whether the seized property is traceable to the violation of a federal offense[,]"

consistent with *United States v. Jamieson*, 427 F.3d 394 (6th Cir. 2005) and *United States v. Jones*, 160 F.3d 641 (10ᵗʰ Cir. 1998). (ECF No. 5, PageID.52-58.)

### i. *Jamieson / Jones*

In *Jamieson*, the Sixth Circuit considered "whether due process requires . . . a probable cause hearing to support restraint of assets prior to trial or whether the indictment is sufficient[,]" and the court had "no quarrel with the district court's decision to apply *Jones* . . . ." *Jamieson*, 427 F.3d at 406-407. In *Jones*, the Tenth Circuit considered "whether due process requires a district court to conduct a post-restraint, pre-trial adversarial hearing before continuing to freeze assets that a defendant allegedly needs for legal and living expenses[,]" and advised:

> We think the proper balance of private and government interests
> requires a post-restraint, pre-trial hearing but only upon a properly
> supported motion by a defendant. Due process does not automatically
> require a hearing and a defendant may not simply ask for one. As a
> preliminary matter, a defendant must demonstrate to the court's
> satisfaction that she has no assets, other than those restrained, with
> which to retain private counsel and provide for herself and her family.

*Jones*, 160 F.3d at 643. *See also United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1163 (2d Cir. 1986) ("appellants are not entitled to an immediate probable cause hearing in advance of the forfeiture trial[.]"). "An adversarial hearing that occurs shortly after freezing assets would serve to diminish the risk of an erroneous deprivation at a meaningful time." *Id.*, 160 F.3d at 646. "[D]ue process requires a district court to conduct a post-restraint, pre-trial hearing before

24

continuing to freeze assets if a defendant needs the assets for reasonable legal and living expenses and makes a prima facie showing that the grand jury erred in determining the assets are traceable to the underlying offense." *Id.*, 160 F.3d at 649.

### ii.   Traceable (18 U.S.C. § 981(a)(1)(C))

The civil forfeiture statute permits forfeiture to the United States of "[a]ny property, real or personal, which constitutes or is derived from proceeds *traceable* to" certain, specified violations.  18 U.S.C. § 981(a)(1)(C) (emphasis added).  This report presumes 18 U.S.C. § 981 is the source of Plaintiff's traceability argument, as Plaintiff cites it in his pleading when arguing there is no adequate remedy at law (*see* ECF No. 5, PageID.50), as well as within his motion response, where he contends the forfeiture notice "is insufficient on its face[,]" because it "did not inform [him] of any fact(s) indic[a]ting that the seized property was traceable to a 'particular' federal violation[.]"  (ECF No. 24, PageID.278-279.)  *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.") (citations omitted).

As Plaintiff points out in his response:  "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citing cases).  (ECF No. 24, PageID.277.)  Similarly, in his supplemental response, Plaintiff acknowledges "the Due Process Clause . . . requires only that the Government's effort [at notice] be 'reasonably calculated' to apprise a party of the pendency of the action[.]"  *Dusenbery v. United States*, 534 U.S. 161, 170 (2002).  (ECF No. 31, PageID.344.)

To the extent Plaintiff contends the notices are improper or deficient on the basis that they do not inform him "of the essential acts or omissions that subject[] his property to forfeiture[,] *e.g.*, that the property was traceable to a violation of federal law[,]" (*id.*, PageID.277; *see also id.*, PageID.279), each of the notices regarding seizure of funds in certain bank accounts cites, *inter alia*, 18 U.S.C. § 981(a)(1)(C) as authority for forfeiture (*see* ECF No. 31-2, PageID.354, 355, 359), and this statute permits forfeiture to the United States of, *inter alia*:

> Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section 215, 471, 472, 473, 474, 476, 477, 478, 479, 480, 481, 485, 486, 487, 488, 501, 502, 510, 542, 545, 656, 657, 670, 842, 844, 1005, 1006, 1007, 1014, 1028, 1029, 1030, 1032, or 1344 of this title or any offense constituting "specified

unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

18 U.S.C. § 981(a)(1)(C).[11] A traceability hearing is not warranted. As the Government points out on the issue of notice, Plaintiff "need not understand the underlying tracing and forfeitability of the property at issue to have filed a claim in the administrative proceedings," *see* 18 U.S.C. § 983(a), "which he failed to do." (ECF No. 27, PageID.325.) Thus, as to the seized funds, the Court does not have jurisdiction at this time to conduct the traceability hearing Plaintiff requests.

### iii.    Burden of proof (18 U.S.C. § 983(c))

Where Plaintiff alleges there "was error believing that the funds are forfeitable[,]" (*id.*, PageID.54-58), he contends "neither a grand jury or judge of this court, has made a finding of probable cause that the funds in the bank accounts 'constitute or are derived, directly or indirectly, from gross proceeds traceable to the commission of' any offense." (ECF No. 5, PageID.54 (quoting *Jamieson*, 427 F.3d at 406); *see also* ECF No. 24, PageID.286.) Plaintiff alleges his years long ownership and operation of Key to Life Transport constitutes a "bona fide" reason why "the FBI erred . . . ." (*Id.*, PageID.54-55.)

---

[11] 18 U.S.C. § 1956 ("Laundering of monetary instruments") defines "specified unlawful activity" as including an offense under 18 U.S.C. § 666 ("Theft or bribery concerning programs receiving Federal funds"). *See* 18 U.S.C. § 1956(c)(7)(D).

"In a suit or action brought under any civil forfeiture statute for the civil forfeiture of any property . . . the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture[.]" 18 U.S.C. § 983(c)(1).  Thus, Plaintiff contends, "the burden of proof is on the F.B.I. to show that the seized funds are forfeitable."  (*Id*., PageID.57-58 (citing 18 U.S.C. § 983(c)(1).)  *See also Jamieson*, 427 F.3d at 406 ("When the defendant makes the required showings, the burden then shifts to the prosecution to establish, by probable cause at an adversarial hearing, that the restrained assets are traceable to the underlying offense.") (citation omitted).  However, it appears Section 983(c)(1) would apply in *judicial* proceedings.  *See Bermudez v. City of New York Police Dep't*, No. 07 CIV. 9537 (HB), 2008 WL 3397919, at *3 (S.D.N.Y. Aug. 11, 2008) ("In judicial proceedings the Government is required to establish by a preponderance of the evidence that the property is subject to forfeiture.") (citing 18 U.S.C. § 983(c)(1)); *Paret–Ruiz*, 827 F.3d 167, 171 (1st Cir. 2016) ("If a claim is filed, *see id*. § 983(a)(2)(A), the government must initiate a judicial proceeding in which it will bear the burden of demonstrating, 'by a preponderance of the evidence, that the property is subject to forfeiture,' *id*. § 983(c)(1).  If no claim is filed, the property is forfeited administratively.") (referencing 19 U.S.C. § 1609).  (*See also* ECF No. 27, PageID.325-326.)

### f.      Summation

As one court noted in its order denying motions for return of seized property, "[t]he administrative forfeiture proceedings initiated by the government provide [movants] an adequate remedy at law." *In re Chandler*, 270 F.R.D. 576, 578–79 (S.D. Cal. 2010).  Here, as Defendant convincingly summarizes, "the FBI seized the property at issue pursuant to judicially authorized warrants," "Plaintiff ignored the administrative forfeiture process[,]" and "he cannot address it now with an improper filing."  (ECF No. 20, PageID.245.)  *See In re Chandler*, 270 F.R.D. at 578 ("funds were seized pursuant to a court issued warrant; administrative forfeiture proceedings have been initiated, where movants may challenge the seizure; and, in the event criminal charges are filed, the issues raised here may be revisited there.").  Plaintiff's contention that "no forfeiture proceeding, administrative or judicial, has ever been filed[,]" (ECF No. 31, PageID.347), is, as detailed above, inaccurate.

Accordingly, to the extent Plaintiff seeks return of the seized bank accounts, the Court lacks subject matter jurisdiction..

### 3.      Whether Plaintiff has standing to contest forfeiture of the Ford Transit Van?

To the extent Plaintiff's operative pleading seeks the return of a 2024 Ford Transit Van, which Plaintiff alleges "was operated by Key to Life Transport pursuant to a Memorandum of Understanding with Tristate Guardian Services[,]"

(*see* ECF No. 5, PageID.48-49), Plaintiff alleges he "owns and operates Key to
Life Transport . . . ."  (*Id*., PageID.49; *see also id*., PageID.54.)  *United States v
One 1988 Toyota Pick Up Truck*, 1993 U.S. Dist. LEXIS 15014, at *7 (E.D. Mich.
Aug. 6, 1993) (Gadola, J.) ("An interest sufficient to challenge a forfeiture action is
usually established by showing that the claimant owns the asset.  Ownership,
however, is determined by more than bare, legal title.  A claimant must
demonstrate dominion and control over a *res* in order to establish his standing.").

Preliminarily, Defendant represents in its motion that it "obtained an
amended seizure warrant as to the van on June 25, 2025," because "the original
warrant for the van . . . erroneously stated it was to seize funds held at JP Morgan
Chase."  (ECF No. 20, PageID.235 n.2; ECF No. 27, PageID.326 n.1.)  Although
Plaintiff contends in his response that Defendant "has now admitted that the 2024
Ford Transit Van was seized without a valid warrant at the time of the seizure[,]"
(ECF No. 24, PageID.287), Defendant explains in its reply that "[t]he technical
error regarding the seizure warrant for the van has already been corrected,"
because Defendant "obtained an amended seizure warrant as to the van on June 25,
2025[.]"  (ECF No. 27, PageID.326; *id*., n.1.)

In any event, the more significant point is Defendant's representation in its
motion that that the van "was subject to administrative forfeiture proceedings and a
valid claim was filed by the *sole* registered owner of the vehicle."  (ECF No. 20,

30

PageID.245 n.3 (emphasis added); *see also id.*, PageID.237-238.)  Indeed, it does not appear that Plaintiff has standing to seek the return of the Ford Transit Van. Even if "agents . . . seized a Ford Transit van used in Plaintiff's business," (ECF No. 31, PageID.342), and even if "[o]ne notice was . . . addressed to a third party[,]" (*id.*, PageID.344), Plaintiff seems to be incorrect that the FBI "seized *his* Ford Transit van . . . [,]" (*id.*, PageID.346 (emphasis added)), because a June 13, 2025 "notice of seizure of property and initiation of administrative forfeiture proceedings," which was addressed to Deondra Durrell Gray, indicates that, on April 22, 2025, the FBI seized property described as a "2024 Ford Transit 350 Van *registered to Kijuana Evans*, the registered agent for Tri-State Guardian Services, Inc., *and in the possession of Deondra Gray* at 19634 Spencer St, Detroit, Michigan, Valued at $45,250.00, VIN:  1FDAX2C87RKA50940[.]"  (ECF No. 31-2, PageID.360-361 (emphases added).).  *See Langston v. Charter Twp. of Redford*, 623 F. App'x 749, 755 (6th Cir. 2015) ("In Michigan, as is the case in most federal forfeiture actions, 'one who has a possessory interest in the *res,* with its attendant characteristics of dominion and control,' has standing to contest a forfeiture.") (citation omitted).  *See also United States v. One 1988 Honda Accord VIN 1HGCA6188JA002917*, 735 F. Supp. 726, 728 (E.D. Mich. 1990) ("In determining ownership, courts generally look to indicia of dominion and control, such as possession, title and financial stake.") (citing, *inter alia*, *United States v. One 1945*

31

*Douglas C-54 (DC-4) Aircraft, Serial No. 22186*, 647 F.2d 864, 866 (8th Cir. 1981)).

Accordingly, to the extent Plaintiff seeks return of the seized Ford Transit van, he has not shown that he has standing to contest the forfeiture.

### 4. Whether Plaintiff has stated a claim upon which relief may be granted as to the seized cell phones and legal papers?

Plaintiff's operative pleading also seeks the return of "cell phones" (*see* ECF No. 5, PageID.42-43) and "legal papers" (*see id*., PageID.43-45).  In its motion, the government acknowledges that the cell phones and the legal papers are not currently subject to administrative forfeiture proceedings but explains they are "currently held as evidence in an ongoing criminal investigation."  (ECF No. 20, PageID.245-246.)

### a. Fed. R. Civ. P. 12(b)(6)

To the extent Plaintiff advocates for the return of seized cell phones and legal papers, Defendant moves for dismissal under Fed. R. Civ. P. 12(b)(6).  (ECF No. 20, PageID.228, 238-239, 245-246.)  In his response, Plaintiff argues he has "stated a 'plausible' claim upon which relief can be granted."  (ECF No. 24, PageID.285-287.)

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true."  *Keys v. Humana, Inc.*, 684 F.3d 605,

608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation

omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(concluding that a plausible claim need not contain "detailed factual allegations,"

but it must contain more than "labels and conclusions" or "a formulaic recitation of

the elements of a cause of action"). Facial plausibility is established "when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

at 678. "The plausibility of an inference depends on a host of considerations,

including common sense and the strength of competing explanations for the

defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727

F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards

than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520

(1972). However, even in pleadings drafted by *pro se* parties, "'courts should not

have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482

F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594

(6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims

that were never presented . . . nor may courts construct the Plaintiff's legal

33

arguments for him.  Neither may the Court 'conjure up unpled allegations[.]'"

*Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009)

(Ludington, J., adopting report and recommendation of Binder, M.J.).[12]

### b.  Fed. R. Crim. P. 41(g) ("Motion to Return Property.")

As noted above, "[a] person aggrieved by an unlawful search and seizure of

property or by the deprivation of property may move for the property's return.

****  The court must receive evidence on any factual issue necessary to resolve

the motion."  Fed. R. Crim. P. 41(g).  "In order to prevail on a Rule 41(g) motion,

the moving party 'must demonstrate that (1) he is entitled to lawful possession of

the seized property; (2) the property is not contraband; and (3) either the seizure

was illegal or the government's need for the property as evidence has ended.'"

*United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 311 (S.D.N.Y. 2018) (quoting

*Ferreira v. United States*, 354 F.Supp.2d 406, 409 (S.D.N.Y. 2005)).

### i.  Whether Griffin is entitled to lawful possession of the seized cell phones and legal papers and whether the property is contraband?

Defendant FBI does not appear to challenge that Plaintiff lawfully possessed

the seized cell phones and legal papers; nor does Defendant appear to contend that

---

[12] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

the property was contraband.  (ECF No. 20, PageID.246.)  Defendant does argue that Plaintiff "does not clearly claim ownership over the legal papers seized as evidence in the FBI's ongoing investigation."  (ECF No. 20, PageID.238; *see also* ECF No. 27, PageID.323.)  Perhaps that is so, although Plaintiff does allege that he "owns and operates Key to Life Transport (Key)[,]" (ECF No. 5, PageID.49), "[f]or years, [he] owned and operated Key to Life Transport, a specialized transportation business[,]" (*id*., PageID.54), and "since 2019, [he] operated Key to Life Transport as a *sole proprietor* [seemingly at odds with state records—*see* n.5 above], with most request[s] received via text, telephone or email . . . [,]" (*id*., PageID.55 (emphasis added)).

Still, these questions need not be resolved here, as this report assumes, *arguendo*, that Plaintiff had lawful possession of the seized cell phones (perhaps excepting the cell phone belonging to his "live-in girlfriend," as discussed below) and legal papers and that the property was not contraband.

### ii.      Has Griffin demonstrated that the seizure was illegal?

Defendant contends that Plaintiff "has not met his burden to show that the seizure was illegal . . . ."  (ECF No. 20, PageID.246; *see also id*., PageID.240.) *See United States v. Gladding*, 775 F.3d 1149, 1152 (9th Cir. 2014) ("The burden of proof on a Rule 41(g) motion depends on when the defendant files the motion. 'When a motion for return of property is made before an indictment is filed (but a

criminal investigation is pending), the movant bears the burden of proving both that the [property's] seizure was illegal and that he or she is entitled to lawful possession of the property.'") (quoting *United States v. Martinson,* 809 F.2d 1364, 1369 (9th Cir.1987) (citations omitted)).

The "first" April 15, 2025 search warrant allowed for the seizure of, *inter alia*, multiple types of "records" (ECF No. 15, PageID.161 ¶¶ 1-11), as well as "[e]lectronic equipment capable of having records in [such items], including cellular telephones, smartphones, desktop computers, laptop computers and tablets[,]" (*id.*, ¶ 13). (*See also* ECF No. 5, PageID.41.) According to Plaintiff, the "second" April 15, 2025 search warrant allowed for the seizure of, *inter alia*, "[t]he cellular device assigned call number 313-826-9515." (*See id.*, PageID.41-42.)

Thus, it appears the cell phones and legal papers seized from Plaintiff's residence (18779 Huntington Avenue) fell within the bounds of one or both of the search warrants mentioned in this pleading.[13] Nonetheless, the Court will address

---

[13] In his November 7, 2025 supplemental response, Plaintiff contends he received an inventory receipt for the seized client files, computers, and a cell phone at his residence, but he "never [received] a copy of the warrant itself[,]" and he also contends the FBI "seized . . . business property without providing any copy of the warrants and has since refused to produce them." (ECF No. 31, PageID.342, 346.) However, this is belied by Plaintiff's prior filings: (1) Plaintiff's May 27, 2025 amended complaint describes two search and seizure warrants – one regarding his residence and electronic devices and one regarding his person and a cell phone (*see* ECF No. 5, PageID.41-43); and, (2) the search and seizure warrant signed by Judge Altman on April 15, 2025 – and seemingly the first of the two warrants described

briefly Plaintiff's allegation that "[i]nsufficient probable cause existed for the

brea[d]th of seizures made . . . ."  (ECF No. 5, PageID.40.)

### (A)    Cell phones

To the extent Plaintiff's operative pleading "seeks the return of all cellular

telephones[,]" (ECF No. 5, PageID.42-43), he alleges the FBI "seized at least eight

(8) cellular telephones," of which:

- at least one "belonged to Plaintiff's live-in girlfriend[;]"

- one or more "contain a wealth of information protected by the attorney-client privilege, including recent privileged communications between Plaintiff and one or more attorneys[;]"[14]

- multiple "are registered to, and were used exclusively for[,] LG-Solutions Unlimited[,]" *i.e.*, a business Plaintiff operated; and,

- one or more "contain the names, dates of birth (DOB), Social Security Numbers (SSN), Insurance Policy Numbers, medications, doctors' information, Mental Health statuses of

---

in the operative pleading (*see id.*, PageID.41) – is attached to Plaintiff's July 24, 2025 filing (*see* ECF No. 15, PageID.159-161).

[14] For example, Plaintiff alleges:  "Attorney Avery Bradley acted as counsel of record for LG-Solutions Unlimited in a Civil matter against the Michigan Department of Technology, Management and Budget (DTMB) and the Michigan State Police (MSP).  One or more of the seized cellular telephones contains numerous texts and emails concerning that civil matter, including, but not limited to[,] objectives, strategies and future courses of action.  In this respect, the seized cellular telephones contain a trove of privileged information, data and communication between Plaintiff and one or more attorneys of record and others." (ECF No. 5, PageID.43 (internal footnote omitted)).

over 160 individuals deemed legally incapacitated by Oakland County Probate Court."

(*Id*., PageID.42-43.)  Plaintiff's pleading also notes "the specific reference of the cellular number (313)826-9515 in the second warrant," and alleges there are "no other cellular numbers listed or referenced to justify the remaining search and seizure of every cellular telephone in plaintiff's home."  (ECF No. 5, PageID.42-43.)

Preliminarily, Griffin would not have standing to contest the seizure of a telephone belonging to his "live-in girlfriend."  More to the point, the seizure of "[e]lectronic equipment capable of having [certain, previously specified] records . . . ," including "cellular telephones" and "smartphones," was permitted – as described above – by the "first" warrant for 18779 Huntington Avenue, Harper Woods, MI 48225.  (*See* ECF No. 15, PageID.161 ¶ 13).  And, while Plaintiff alleges that one or more of the seized phones contains privileged or personal information or that the search and seizure warrants "failed to establish a nexus between every cell phone and the alleged criminal activity under investigation[,]" (ECF No. 5, PageID.42-43), these arguments are more appropriately made in a suppression hearing in an ensuing criminal case.  The fact remains that these items were seized pursuant to valid warrants upon probable cause findings by two United States Magistrate Judges.  (*See also* ECF No. 33, PageID.378.)  In sum, Plaintiff's

amended complaint does not demonstrate that the seizure of the cell phones was illegal.

**(B)    Legal papers**

To the extent Plaintiff's operative pleading seeks the return of "legal papers," (ECF No. 5, PageID.43-45), Plaintiff alleges that, "[o]n the date of the seizures, Tristate Guardian Services (Tristate) was the legal guardian and/or conservator of over 160 individuals deemed legally incapacitated by a Probate Court." (*Id*., PageID.43.)  *See, e.g., In re Guardianship of Malloy*, 15 N.W.3d 142, 145 (Mich. 2024) ("thousands of Michiganders [are] under the care of a professional guardian who, by virtue of their legal incapacitation, are among the most vulnerable groups in our society.").  (*Id*., PageID.43-44.)  Plaintiff also alleges that, "[o]perating under a  Memorandum of Understanding with Tristate, Key to Life Transport executed some . . . core duties, and others, on behalf of Tristate." (*Id*., PageID.44.)  Plaintiff additionally alleges that, "[w]ithout the treasure-trove of data and information stored in one or more cellular telephones (arguably privileged), the taking of the cellular telephones and court files has placed numerous lives at risk."  (ECF No. 4, PageID.44 (internal footnote omitted).)  Moreover, Plaintiff alleges that, "[w]ithout the legal letters of authority," neither Key to Life Transport nor Tristate can "provide consent(s) for treatment, release(s) of information (as well a[s] receive critical information), [or]

effect discharge from a mental hospital or other facility." (ECF No. 5, PageID.44-45.) In the end, Plaintiff alleges the FBI's seizure has "placed the critical care of over 160 in a precarious position[,]" and, therefore, "the seizure was unreasonable." (*Id*., PageID.45.)

Here, too, Plaintiff's allegations take issue with the effects of the legal paper seizures. Plaintiff's amended complaint does not demonstrate that the seizure of the legal papers was illegal.

### iii. Has Griffin demonstrated that the Government's need for the cell phones and legal papers as evidence has ended?

Defendant also contends Plaintiff "has not shown that . . . the government's need for the property as evidence has ended." (ECF No. 20, PageID.240; *see also id*., PageID.245-246.) *Allen v. Grist Mill Cap. LLC*, 88 F.4th 383, 396 (2d Cir. 2023) ("during the pendency of an ongoing criminal investigation or proceeding, the defendant bears the burden of demonstrating that the government's retention of the seized property is unreasonable."); *In re Search Warrant dated Nov. 3, 2021*, No. 24-192, 2024 WL 3507596, at *5 n.8 (2d Cir. July 23, 2024) ("Meads has not shown why the government's retention of the property during the pendency of its ongoing criminal investigation is unreasonable, and there is therefore no basis to disturb the district court's denial of the Rule 41(g) motion.").

To be sure, Plaintiff responds:  "The fact that some of the documents are official Probate court records, and others related to a separate civil matter that Plaintiff was engaged in against the Michigan State Police, *et al.,* suggests that those papers have little, to no evidentiary value to the F.B.I.  And, even if they do, a copy should suffice."  (ECF No. 24, PageID.287 n.8.)  In support of this proposition, Plaintiff cites *Sovereign News* Co. *v. United States,* 690 F.2d 569, 577 (6TH Cir. 1982) ("We agree that the government has a right to copy documents lawfully in its possession.") (ECF No. 24, PageID.287 n.8.)  However, that case only supports the notion that the Government has the right to make copies, not that "copies should suffice" or that the Government *must* make them upon demand.  Plaintiff further attaches to its supplemental response a portion of the transcript from an October 20, 2025 Oakland County Probate Court hearing, which Griffin offers to establish that "the ward's attorney [*i.e.*, Austin Wayne Probst] admits receiving documents seized from Plaintiff by [the] FBI."  (ECF No. 31, PageID.343, 350; ECF No. 31-4.)  Put another way, Plaintiff contends it is "arbitrary and capricious" for the FBI not to return his property but to "provid[e] seized business documents to a probate attorney . . . ."  (ECF No. 31, PageID.345.)  But this does not necessarily demonstrate arbitrary and capricious action – assuming, *arguendo*, that that is the correct standard of scrutiny applicable here – as the Court can well appreciate why the Government might be willing to give

copies to a ward's attorney, who is *an officer of the Court* representing disabled or incompetent clients, for apparent use at a probate hearing, but choose not to release such records to a non-attorney under investigation for conspiracy, theft, bribery, and/or fraud.  (*See* n.6, *supra*.)

Plaintiff also contends his "business assets . . . have been held since April 2025 without any hearing or forfeiture proceeding[,]" which impacts his livelihood, *i.e.*, a "substantial private interest[.]"  (ECF No. 31, PageID.346.)  *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (due process factors include private interest, risk of an erroneous deprivation, and the government's interest).  However, Plaintiff's statement that he has been "depriv[ed] of property without hearing or process . . . [,]" (ECF No. 31, PageID.346), is unavailing if the property was seized pursuant to one or more of the search and seizure warrants described in Plaintiff's operative pleading (*see* ECF No. 5, PageID.41-42).  Moreover, his "business" appears to be Tri-State Guardian Services Inc. and/or Key to Life Transport Limited Liability Company, both corporate entities and neither of which is a party to this lawsuit, and, as shown above, the Ford Transit van (*i.e.*, an asset allegedly operated by Key to Life Transport pursuant to a memorandum of understanding with Tristate Guardian Services), was registered to another individual and in the possession of *yet another* individual (*see* ECF No. 31-2, PageID.360-361), neither of whom are parties to this litigation.  The Court will not,

for purposes of standing or otherwise, conflate the named plaintiff with businesses or individuals not before it.

Of course, "when the government has no further legitimate use for the records, it must return the copies as well as the originals." *Sovereign News Co.*, 690 F.2d at 571. Nonetheless, Plaintiff has not demonstrated that "the seizure was illegal or the government's need for the property as evidence has ended.'" *Ferreira*, 354 F.Supp.2d at 409.[15]

Accordingly, to the extent Plaintiff seeks return of the seized cell phones and legal papers, Plaintiff's amended complaint (ECF No. 5) fails to state a claim upon which relief may be granted and/or demonstrate entitlement to relief pursuant to Fed. R. Crim. P. 41(g). However, if and when Plaintiff can demonstrate that the Government's need for the cell phones and papers has ended, Plaintiff may be in a

---

[15] Although the Government is quite tight-lipped on the subject of the ongoing investigation in its briefing (*see* ECF No. 20, PageID.237-238, 245-246; ECF No. 27, PageID.322-323), the F.B.I.'s website makes clear that, as of this writing, the investigation continues. Under the title "**Seeking Information Concerning Wards of Guardian & Associates and Tri-State Guardian Services,**" it states: "The FBI's Detroit Division is seeking information concerning current and former wards of Guardian & Associates and Tri-State Guardian Services in Southeast Michigan. Guardian & Associates and Tri-State Guardian Services were court-appointed representatives of elderly and developmentally disabled persons (wards). If you have information concerning a ward of Guardian & Associates or Tri-State Guardian Services, please fill out this short form." *See* https://forms.fbi.gov/victims/DEwards (last visited Dec. 4, 2025).

position to renew his request with respect to these particular items.  For this reason, with respect to those items, the motion should be denied *without prejudice*.

### D.    Conclusion

Plaintiff alleges, *inter alia*, that "[i]nsufficient probable cause existed for the breath of seizures made upon Griffin's person, his residence, and bank accounts[,]" (ECF No. 5, PageID.40), he seeks an immediate hearing and return of his property (*id.*, PageID.58), and, similarly, his supplemental response seeks "immediate return of [his] seized property or, alternatively, . . . a prompt due-process hearing" under *Mathews*.  (ECF No. 31, PageID.347.)  (*See also id*., PageID.345, 346; ECF No. 24, PageID.271, 280 n.4.)

Still, as noted at length above, the Court does not have subject matter jurisdiction over Plaintiff's claims for the return of seized bank accounts (*see* Section II.C.2), Plaintiff does not have standing to contest forfeiture of the Ford Transit van (*see* Section II.C.3), and, as to the seized cell phones and legal papers, Plaintiff has failed to state a claim upon which relief may be granted and/or demonstrate entitlement to relief pursuant to Fed. R. Crim. P. 41(g) (*see* Section II.C.4).  Accordingly, it is **RECOMMENDED** that the Court **GRANT** Defendant's motion to dismiss (ECF No. 20): (1) as to the seized bank accounts and Ford Transit van with prejudice; and, (2) as to the cell phones and legal papers

44

without prejudice.  If the Court agrees with this recommendation, then it may also

**DEEM MOOT** Plaintiff's motion for preliminary injunction (ECF No. 10).

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

45

in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: December 4, 2025

_____
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE